ABREY v. DUFFIELD.

1. WILLS—CONSTRUCTION—BEQUEST TO SCRIVENER.

Where it is claimed that a will bequeaths the residuum of a trust estate to the trustee, who was also the scrivener who drew the will, and was a lawyer familiar with the phrases and language commonly used to create a devise or bequest, the circumstances not only invite great circumspection, but authorize the court to construe the provision as unfavorably to 'the claim of the trustee as the language used will permit.

2. SAME — TESTAMENTARY TRUST — CONSTRUCTION — RESIDUUM TO TRUSTEE.

Where a will bequeaths a fund to the scrivener in trust, and provides that in case any remainder be left after execution of the trust " he shall appropriate the same to the de-

fraying of the expenses of this trust, or in such other or different manner as he may deem best," the trustee does not take the residuum personally, but the clause should be construed as directing the trustee to devote the remainder of the trust fund to some undefined purpose apart from an individual use, and the clause being inoperative for vagueness and uncertainty, the residuum passes to the heirs as intestate property. GRANT, J., McALVAY, C. J., and CARPENTER, J., dissenting.

3. ATTORNEYS—ETHICS—BEQUEST TO SCRIVENER.
   It is contrary to the spirit of the code of ethics for a lawyer to draft a will making dispositions of property in his favor, and the court looks upon such dispositions with suspicion.

Cross-appeals from Wayne; Brooke, J. Submitted October 17, 1906. (Docket No. 43.) Reargued June 10, 1907. (Docket No. 1.) Decided July 13, 1907.

Bill by Catherine A. Abrey and others against Bethune Duffield and another for a construction of the last will and testament of Theresa Abbott, deceased. From the decree rendered, complainants and defendant Duffield appeal. Affirmed.

Mrs. Theresa Abbott died testate April 2, 1890. The material parts of her will are as follows:

"*First.* I direct my executor, hereinafter named, to see that I am buried in the lot of my beloved daughter Alice T. Chesebrough, now deceased, in the Elmwood Cemetery at Detroit, and to do all things necessary in connection therewith in the way of a monumental stone or stones.

"*Second.* I direct that my debts remaining unpaid, whether on mortgage or otherwise, shall be by my executor fully paid, together with all expenses and charges of closing my estate and performing the trusts in this will contained.

"*Third.* I hereby give, devise and bequeath all my real and personal estate with full power to sell and convey and convert the same into money unto D. Bethune Duffield, my executor and trustee, to whom I commit the same with instructions as far as he can and in the exercise of

his best discretion to carry out my wishes as herein expressed, viz. :

"1. That in case my son Thomas H. Abbott survives me that he, my executor and trustee, will pay so much each year and no more as will secure an economical and comfortable support to him while he lives; and in case he should become enfeebled by disease and helpless, then that he be provided with comfortable support and quarters at Harper Hospital in the city of Detroit and to this end my executor is here instructed and directed, leaving it to the discretion of my executor whether under special circumstances he should be allowed anything over this annual provision made for him. * * * "

Then follow several specific bequests unnecessary to mention. The fourth, fifth, and sixth clauses are as follows :

" In case any remainder be left in the hands of my executor and trustee, then he shall appropriate the same to the defraying of the expenses of this trust, or in such other or different manner as he may deem best.

" In case of the death of said D. Bethune Duffield, executor and trustee as aforesaid, before these trusts shall have been fully carried into effect, then I here name his son Bethune Duffield as his successor in this trust with like powers as are herein conferred upon his father, and both are hereby relieved from the necessity of entering into bonds as such executor and trustee.

" I direct my executor to set apart a certain sum to keep the lot in Elmwood Cemetery in neat and orderly shape and condition forever."

She made three codicils. The second codicil contained the following provision :

" I hereby revoke the provisions of my said will relative to the disposition of my piano and direct that my son Thomas is to have the use and possession of it during his life, but that the same is not to be disposed of by him. At the death of my said son, my executor is to make such disposition of my piano among my relatives as provided in my said will as he may deem best."

Mr. D. Bethune Duffield, the first executor and trustee, died March 12, 1891, and the defendant Bethune Duffield

was immediately appointed as the administrator de bonis non with the will annexed. The defendant trustee regularly filed annual statements of his accounts, and was allowed each year compensation for his services. Thomas H. Abbott died April 28, 1901. The respondent and his father in his lifetime carried out the trust. The estate has been converted into cash, and there remains in the hands of the defendant $2,569.55, subject to the payment of $300 for the care of a cemetery lot, as provided in the will, and also to any further claim for services. Complainants are the heirs of Mrs. Abbott, and filed this bill to obtain a construction of the will. The court held that the title to the entire estate was conveyed to the trustee by the third clause of the will; that the whole estate was taken absolutely in trust; that the fourth clause contained no language equivalent to a gift or a devise, but was simply a direction to the trustee what to do with the trust funds possibly remaining in his hands after the specific object of the trust had been performed, and that such direction was void for uncertainty. Decree was entered for a distribution of the funds in the defendant's hands among the complainant heirs, directing the probate court to fix the amount of defendant's compensation and charging him with interest from the filing of the bill. Both parties appeal.

*Graves & Hatch*, for complainants.

*William J. Gray*, for defendant Duffield.

GRANT, J. (*after stating the facts*). Probably, in the multitude of cases that have come before the courts of this country and of England for construction, the provisions of no two wills or trust deeds are exactly alike. The courts and law writers recognize that—

"No general rule can be stated that will determine when a conveyance will carry with it a beneficial interest, and when it will be construed to create a trust; but the intention is to be gathered in each case from the general

purpose and scope of the instrument." 1 Perry on Trusts (4th Ed.), § 151.

In each case, where the language is unambiguous, courts must ascertain from the four corners of the instrument the intention of the testator, and enforce that intention, unless unlawful.

Counsel for complainants say that the "familiar canon of construction is that the intention of the testatrix must be ascertained, and, if legal and adequately expressed, must prevail." The same counsel quote the language of *Ralston* v. *Telfair*, 2 Dev. Eq. (N. C.) 255, as well stating the doctrine:

"There is a distinction between an express trust for an indefinite purpose, and those cases where, from the indefinite nature of the purpose, the court concludes that a proper trust could not have been intended, though words may have been used, which, had the objects been definite, would by construction import a trust. In the first description of cases the devisee does not take beneficially; in the latter, he does."

The language of the will in question contains no ambiguity. If the testatrix intended to vest in her trustee complete and uncontrolled dominion over the residuum after the execution of the trust the defendant is entitled to a decree.

The testatrix had other children, but the chief object of her solicitude was her son Thomas. For reasons which do not appear, and which are immaterial, she evidently considered him incompetent to manage his estate. She therefore desired to provide for his maintenance and care to the extent of the expenditure of all of her estate if necessary. No contest was made over the will. She chose as her executor and trustee a man of high character and repute, to whom she referred in her last codicil, executed shortly before her death, as her friend. She chose to provide that in the event of his death his son should succeed to the trust. She had confidence in them, and the result shows that the confidence was not misplaced. The an-

nual accounts rendered showed that the defendant advanced money of his own for the care of his cestui que trust for several years; one year the balance due him being $1,368.17. She evidently contemplated that the two executors named would live to execute the trust. She also contemplated that the entire estate might be used in its execution, and also that there might be a residuum after its execution. It is clear, also, that she intended to make a testamentary disposition of her entire estate, both real and personal.

The third clause of the will conveyed the entire title, as the judge found, to the executor named. It is clear that she did not intend the residuum, if any there were, to go to her other children. The language of the fourth clause cannot be construed to indicate any such intention. She did intend to dispose of it otherwise. If the fourth clause were eliminated, then, under the universal rule in this country and in England, since the enactment of 1 Wm. IV, chap. 40, the residuum must be divided among the heirs. 1 Perry on Trusts (4th Ed.), § 155. Even prior to that enactment the courts of England were astute to find language which would make the executors trustees rather than beneficiaries, and "therefore a little matter was sufficient to show that intent." *Bishop of Cloyne* v. *Young*, 2 Ves. Sr. 91, decided in 1750. The trust was exclusively for the benefit of her son, except as to a few specific bequests. It ceased with his death. She clearly intended that it should. She could dispose of the residuum as she pleased. She attempted to do so. What did she intend? is the sole question.

The fourth clause provided for no trust after the first trust had been executed. She provided that he should appropriate it to defraying the expense of the trust, viz., the trust for the benefit of her son, or in such other or different manner as he should deem best. No secret trust is even hinted at; no suggestion of a desire to make any one the object of her bounty; nothing upon the face of the will to indicate that the testatrix had any object or

person other than her trustees in mind to whom she desired the residuum to go. The common expression "in trust" does not appear in the clause. The language clearly indicates that she gave it to him to appropriate as he should deem best. If there had been no trust, if the will had simply devised the property to him to appropriate as he should deem best, under the authorities, the title would have passed to him, and he could appropriate it to himself or to others. With the trust executed, the same rule of construction must apply. The language itself excludes the idea of a trust. It conveys dominion over the entire property, not for any trust, expressed or implied, but to use as the devisee should see fit. There is no room for the application of the doctrine of an express trust for an indefinite purpose.

In all the cases cited by counsel for the complainants, there is language from which it may fairly be inferred that the executor or trustee took it in trust for some purpose, as in *Minot* v. *Attorney General,* 189 Mass. 176, where the testator provided that his residuum should be distributed by his executors "to charitable or worthy objects, or such as I may designate during my lifetime," etc. The court correctly held that it was the intention of the testator to create a trust of some kind. Similar cases are *Morice* v. *Bishop of Durham,* 9 Ves. Jr. 399; *White* v. *Crossman* (N. J. Eq.), 64 Atl. 168; *Forster* v. *Winfield,* 142 N. Y. 327. The following cases appear to support the conclusion which we have reached: *Beck's Appeal,* 116 Pa. 547; *Powell* v. *Powell's Ex'rs,* 2 Murph. (N. C.) 326; *Gibbs* v. *Rumsey,* 2 Ves. & B. 294; *Bulfer* v. *Willigrod,* 71 Iowa, 620; *Taft* v. *Taft,* 130 Mass. 461; *Jacob* v. *Macon,* 20 La. Ann. 162; *Apreece* v. *Apreece,* 1 Ves. & B. 364; *Paice* v. *Archbishop of Canterbury,* 14 Ves. Jr. 370; *Jones* v. *Jones,* 25 Mich. 401.

The learned circuit judge held that under the contention made by the defendant the residuum, in case of the death of the successive executors before the execution of the trust, would go to a stranger, whom the court would

appoint, and that it cannot be supposed that the testatrix would have disposed of such residuum to a trustee, an entire stranger. The correctness of that conclusion may be doubted. That question, however, is not before us. She did provide expressly that either of the two named should appropriate the residuum in any manner he chose, and gave him exclusive dominion over it. What the courts would hold in the event of the death of both executors before the execution of the trust, it is unnecessary to consider. The possibility of the result named has no influence upon the question of her intent as found in unambiguous language. No case cited, or any that I have found, refers to the possible contingency of the death of the executor or trustee before the full execution of the trust as having any influence in the construction of the language used.

Decree should be reversed, and decree entered in this court for the defendant. No costs will be allowed.

McALVAY, C. J., and CARPENTER, J., concurred with GRANT, J.

BLAIR, J. I think that the circuit judge arrived at a correct conclusion in this case, and that his decree should be affirmed. While the intention of the testatrix is the main subject of inquiry, it is necessary to specify in this case the particular intent to be made the subject of inquiry. In my opinion, it is wholly immaterial, for the purpose of this inquiry, whether the testatrix intended to give anything to complainants. Their case is planted upon the proposition that she did not intend to give it to them, but has failed, through the vagueness and uncertainty of her will, to give it to anybody else. Neither is the fact that testatrix intended to dispose of her entire estate important. Complainants' position is, substantially, that she did intend to dispose of her entire estate, but has failed to state how she intended to dispose of the particular part of it in controversy here, which, therefore, passes to them as though she had died intestate. The particular intention

to be ascertained, therefore, is whether the testatrix intended to give the residuum of her estate to her executor and trustee.   If she did, the decree should be reversed.

There is no claim that the original executor or his successor acted otherwise than in the utmost good faith, but in determining the meaning of this will we can have no reference to the characters or conduct of the persons named as trustees.   This is practically an amicable suit to obtain a construction of the will, desired by both parties.   As said by the court of appeals, in *Forster* v. *Winfield*, 142 N. Y. 327:

"Before a gift to executors eo nomine can be held to vest in them individually, the intention that it should so vest must be plainly manifested."

Furthermore, this will was drawn by the original trustee, himself a lawyer, and familiar with the phrases and language commonly used to create a devise, or bequest. This circumstance not only invites great circumspection, but authorizes the court to construe the language used as unfavorably to the claim of defendant as the language will permit.

There is no devise, gift, or bequest contained in the fourth clause of the will.   The grant is in the third clause, and that is not to the individual, as an individual, but as a trustee.   The fourth clause simply contains a direction what to do with the remainder of the trust fund.   The amounts to be paid by the executor for the support of the son Thomas, and to contribute to the support of her sister, Jane Lovell, are largely left to the discretion of the executor, and the exercise of that discretion would directly affect the amount of the residuum.   While this circumstance would not invalidate a gift of the residuum to the executor, it is worthy of consideration in determining whether the testatrix intended to make such a gift.   If the testatrix desired to give the remainder of her estate to the executor, no reason is perceived why the executor, when drawing the will, could not have so stated in a few

clear words.  I am of the opinion that, if such had been the intention, there would have been no room for doubt in its expression in the will.  This clause, in my judgment, should be construed as directing the executor to devote the remainder of the trust fund in his hands to some undefined purpose apart from an individual use, and falls within the principle of *Minot* v. *Attorney General,* 189 Mass. 176, and *Forster* v. *Winfield,* 142 N. Y. 327.

In *Forster* v. *Winfield,* the testator, after providing for the payment of debts, proceeded as follows:

"And the net residue after payment of all such debts, I give to my said executors and to the survivor of them as joint tenants.  I have entire confidence that they will make such disposition of such residue as, under the circumstances, were I alive and to be consulted, they know would meet my approval."

The court say:

"The last part of this clause does not qualify what precedes it.  There he says: ' I have entire confidence that they will make such disposition of such residue, as, under the circumstances, were I alive and to be consulted, they know would meet my approval.'  This language does not necessarily imply that they were to take the land or its proceeds as individuals.  It was just as appropriate in its relation to them as executors.  He gives the real estate or its proceeds to them upon some undefined trust, a confidence not disclosed.  The testator evidently supposed that the secret trust would be carried out, and possibly that it could legally be enforced."

In the case before us the provision is:

"In case any remainder be left in the hands of my executor and trustee, then he shall appropriate the same to the defraying of the expenses of this trust, or in such other or different manner as he may deem best."

If this provision had ended with the word "trust," there could be no question that the trustee would not take the remainder, as an individual, but would hold it in

149 MICH.—17.

trust. In my opinion, the rule of noscitur a sociis should be applied to the alternative clause, "or in such other or different manner as he may deem best." The disposition of the remainder under the alternative clause, like the disposition of the remainder under the original clause, was to be a disposition of property by a trustee holding it in trust; the difference being that in the one case the trust is disclosed, in the other case it is not disclosed. This construction is strengthened by the provision which gives the successor in the trust "like powers as are herein conferred upon his father," clearly indicating the view of the scrivener as well as of the testatrix that she was clothing him and his successor with powers over a trust estate, and not investing them with property rights.

The whole will manifests the extreme confidence of the testatrix in the executor and his son, and her willingness to leave the disposition of her estate very largely to their discretion. The amount to be paid for a monumental stone; the amount to be devoted to the support of the son, and the additional provision that "my executor shall appropriate and pay to him, in case he shall deem it for his best interests, the sum of two hundred dollars per year, or such other or different sum as he may think best;" the provision for her sister, Jane Lovell, and the amount which should be set apart for the cemetery lot—in fact, the most important provisions of the will, depend for their execution largely upon the discretion of the executor. In view of this confidence, it appears to me reasonable to suppose that the testatrix was willing to leave the disposition of the remainder of the trust fund to such trust purposes as her trustee, acting as a trustee and not as an individual, should think best. The case of *Beck's Appeal*, 116 Pa. 547, is cited as opposed to this conclusion. The same court refer to that case in *McCurdy's Appeal*, 124 Pa. 99, as follows:

"But the doctrine of *Beck's Appeal* ought, if possible, to be restricted rather than extended. Its practical application in that case was a disposition of the testator's residuary estate apparently very different from that which he

intended himself, because, if he meant so to do, he could by his will easily have given his whole residuary estate to his executor by name, without referring to ' objects, persons, or institutions.' Besides, it is entirely repugnant to all our ideas of integrity and honesty that an executor should take to himself absolutely the estate which was given to him in confidence that he would appropriate it to other objects and purposes, and in any case, where such a disposition of a testator's estate is claimed, it seems to us that the strictest construction of the will should be invoked to prevent its consummation."

If, as defendant's counsel contends, and I believe correctly, the intention of the testatrix is to be ascertained and enforced, it clearly follows that the decision in *Beck's Appeal* should not be followed. It seems improbable to me that a lawyer of Mr. Duffield's ability understood that the testatrix wished in effect to make an absolute gift to him of the remainder of her estate, and then expressed that intention in the language of this will. Furthermore, to so hold would, in my opinion, be a matter of evil import to be avoided, if possible. By statute, a bequest to a subscribing witness, necessary for proving the will, is declared absolutely void (3 Comp. Laws, § 9268), and this, though the subscribing witness may be and generally is ignorant of the contents of the will. Although there is no statute to invalidate a bequest to a scrivener, the reasons are, at least, as strong for such a statute as in the case of the subscribing witness. I believe it to be generally recognized by the profession as contrary to the spirit of its code of ethics for a lawyer to draft a will making dispositions of property in his favor, and this court has held that such dispositions are properly looked upon with suspicion. *Dudley* v. *Gates*, 124 Mich. 440. I, therefore, do not believe that Mr. Duffield supposed that he was making provision for his own benefit, and it seems clear from his letters that his son had no such supposition until he was so advised by counsel.

I am for affirming the decree, but without costs.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred with BLAIR, J.