# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* MARDIGIAN Estate.

---

MARK S. PAPAZIAN, Executor for the Estate of
ROBERT DOUGLAS MARDIGIAN,

          Appellant,

v

MELISSA GOLDBERG, SUSAN V. LUCKEN,
NANCY VARBEDIAN, EDWARD
MARDIGIAN, GRANT MARDIGIAN,
MATTHEW MARDIGIAN, and JP MORGAN
CHASE BANK, NA,

          Appellees.

FOR PUBLICATION
October 8, 2015
9:05 a.m.

No. 319023
Charlevoix Probate Court
LC No. 12-011738-DE;
          12-011765-TV

---

Before: WILDER, P.J., and SERVITTO and STEPHENS, JJ.

WILDER, P.J.

In this action originating in the Charelvoix County Probate Court, appellees contested the August 13, 2010 trust and the June 8, 2011 will of decedent Robert D. Mardigian (decedent). Appellees challenged the trust and will on the basis that appellant, the proponent of the documents and the recipient, together with his children, of the majority of decedent's estate, also was the drafter of the documents in violation of the Michigan Rules of Professional Conduct (MRPC). In a motion for summary disposition filed in the probate court pursuant to MCR 2.116(C)(10), appellees contended that the devises were void as against public policy, and therefore, unenforceable. The probate court granted the motion for summary disposition, and this appeal ensued. For the reasons articulated herein, we reverse.

# I. STATEMENT OF FACTS

On August 13, 2010, decedent executed an amended trust prepared by appellant,[1] decedent's long-time friend and an attorney, which left the bulk of decedent's estate to appellant and his children, Todd Papazian and Tyler Papazian. Decedent also executed a will prepared by appellant on June 8, 2011 that contained similar provisions. Decedent died on January 12, 2012.

After decedent's death, appellant sought to introduce the documents he had prepared for probate, along with a petition to be appointed personal representative pursuant to the language in the document. Appellees Edward Mardigian, Grant Mardigian, and Matthew Mardigian, decedent's brother and nephews, respectively, challenged the introduction of these documents into probate, as did two of decedent's nieces, appellees Susan Lucken and Nancy Varbedian, and decedent's girlfriend, appellee Melissa Goldberg. At the same time, various appellees, primarily appellees Edward, Grant, and Matthew Mardigian, contended that subsequent writings by decedent, namely a letter with what appellant termed "dubious" handwritten notes should be submitted instead, as writings intended to be a will, and as an amendment to decedent's trust.

Following discovery, appellees Edward, Grant, and Matthew Mardigian moved for partial summary disposition and asked the probate court to void all gifts contained in both the trust and the will to appellant and his children, as a matter of law. Edward, Grant, and Matthew Mardigian argued that the gifts were against public policy, as evidenced by the MRPC, specifically MRPC 1.8(c), which provides: "A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee." The probate court initially denied the motion.[2] However, after Edward, Grant, and Matthew Mardigian verbally renewed their motion during the hearing on November 6, 2013, the probate court then granted the motion on the ground that, as a matter of public policy, it could not enforce the documents.

After the probate court granted the motion for summary disposition, the matter proceeded toward a scheduled jury trial. On the date of the scheduled trial, the probate court denied appellant's motion for a stay under MCL 600.867(1); however, the probate court and other parties agreed that appellant could continue to participate in the subsequent proceedings. For reasons not clear in the record, appellant decided not to continue to participate in the proceedings. Thereafter, the other parties reached a settlement concerning the distribution of funds and the jury was excused. This Court subsequently denied appellant's motion for a stay, and denied reconsideration.

---

[1] Although appellees discuss appellant's initial denial of this fact in their briefs on appeal, appellant's counsel admitted that appellant prepared the documents at the motion hearing below.

[2] The probate court also denied appellant's motion for partial summary disposition regarding all claims of undue influence.

## II. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Dillard v Schlussel*, 308 Mich App 429, 444; 865 NW2d 648 (2014).

> When considering a motion for summary disposition under MCR 2.116(C)(10), a court must view the evidence submitted in the light most favorable to the party opposing the motion. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists when the evidence submitted "might permit inferences contrary to the facts as asserted by the movant." When entertaining a summary disposition motion under subrule (C)(10), the court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing the evidence. [*Id*. at 444-445 (citations omitted).]

We also review de novo the proper interpretation of trusts and wills, as well as the interpretation of statutes. *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013).

## III. ANALYSIS

### A. BINDING SUPREME COURT PRECEDENT

In *In re Powers Estate*, 375 Mich 150, 156, 176, 179; 134 NW2d 148 (1965), our Supreme Court held that a will, devising the bulk of the estate to a member of the family of the attorney who drafted the will, and also naming the attorney as an additional beneficiary, was not necessarily invalid. Rather, in such circumstances, a question of undue influence exists, such that undue influence arising from the relationship is presumed to have been exerted as the means to secure the testamentary gift. *Id*. at 179. In remanding for further proceedings, the *Powers* Court stated:

> This will contest is on no different legal and factual basis than any other in our past jurisprudence and we caution court and counsel if the case is retried to confine the testimony to the issues:
>
> (1) The well-defined, well-recognized test of the testatrix' competency to execute the testamentary instrument at the time she executed it;
>
> (2) The equally well-defined and well-recognized issue of the exercise of fraud or undue influence in the execution thereof, including any presumption created by the fact that proponent was deceased's attorney and the fact that he drew the instrument here involved as such. [*Id*.]

In his concurrence, Justice Souris further noted that:

> Indeed, this Court almost 60 years ago bluntly warned the profession against such conduct, in [*Abrey v Duffield*, 149 Mich 248, 259; 112 NW 936 (1907)]:

"By statute, a bequest to a subscribing witness, necessary for proving the will, is declared absolutely void (CL 1897, § 9268), and this, though the subscribing witness may be and generally is ignorant of the contents of the will. Although there is no statute to invalidate a bequest to a scrivener, the reasons are, at least, as strong for such a statute as in the case of the subscribing witness. I believe it to be generally recognized by the profession as contrary to the spirit of its code of ethics for a lawyer to draft a will making dispositions of property in his favor, and this court has held that such dispositions are properly looked upon with suspicion. [*Dudley v Gates*, 124 Mich 440; 83 NW 97 (1900).]" [*Powers*, 375 Mich at 181 (SOURIS, J., concurring in reversal and remand).]

*Powers* is directly on point to the facts presented in the instant case, and as such is binding on this Court.[3] Under *Powers*, we are required to remand for further proceedings, where appellant would be required to overcome the presumption of undue influence arising from the attorney-client relationship in order to receive the devises left to him and his family.

## B. *KARABATIAN'S ESTATE v HNOT* IMPROPERLY FAILED TO FOLLOW *POWERS* AND, REGARDLESS, IS NOT BINDING ON THIS COURT

Although we remand for further proceedings, we further address the significant policy questions presented by this case. First, appellees note that in *Karabatian's Estate v Hnot*, 17 Mich App 541, 546-547; 170 NW 2d 166 (1969), this Court held a will to be void as against public policy under similar facts. But, we find that the *Karabatian* Court erred in failing to follow *Powers* as binding precedent, and, as a pre-1990 decision, we are not bound by *Karabatian*. Administrative Order No. 1990-6. In addition, even if *Karabatian* may have correctly foretold the outcome to be reached by our Supreme Court should it decide to consider a case with such facts as are presented here, we lack the authority to overrule *Powers*:

Although the Court of Appeals panel in this case correctly anticipated our holding, we disapprove of the manner in which the panel indicated its disagreement with [*People v Goff*, 401 Mich 412; 258 NW2d 57 (1977)]. An elemental tenet of our jurisprudence, stare decisis, provides that a decision of the majority of justices of this Court is binding upon lower courts. [*People v Mitchell*, 428 Mich 364, 369; 408 NW2d 798 (1987) (citation omitted).]

## C. TRUSTS AND WILLS IMPLICATE DIFFERENT PUBLIC POLICY CONSIDERATIONS THAN CONTRACTS AND THEREFORE MAY WARRANT DIFFERENT TREATMENT IN THE APPLICATION OF THE MICHIGAN RULES OF PROFESSIONAL CONDUCT

Second, appellees rightly recognize that MRPC 1.8(c) expressly prohibits the conduct at issue here. Based principally on the enactment of this provision, the fact that our Supreme Court

---

[3] Because "[t]he rules of construction applicable to wills also apply to the interpretation of trust documents[,]" *In re Estate of Reisman*, 266 Mich App 522, 526; 702 NW2d 658 (2005), we conclude that *Powers* applies to both the trust and the will at issue in this case.

has ruled that "public rules of professional conduct may also constitute definitive indicators of public policy," *Terrien v Zwit*, 467 Mich 56, 67 n 11; 648 NW2d 602 (2002), the fact that contracts entered into in violation of the MRPC have been found unenforceable, *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 189; 650 NW2d 364 (2002), and the enactment by the Legislature of MCL 700.7410(1) and MCL 700.2705, appellees argue, separate and apart from the *Karabatian* decision, that the devises to appellant and his children were void as against public policy. If appellees were correct that MCL 700.7410(1) and MCL 700.2705, together with MRPC 1.8(c), make it clear that the public policy of this state prohibits an attorney or specified relative from receiving a devise from an instrument prepared by the attorney for a client, this case might be distinguishable from *Powers*. However, we conclude that appellees' argument is unavailing.

*Terrien* established only that "public rules of professional conduct *may* also constitute definitive indicators of public policy." *Terrien*, 467 Mich at 67 n 11 (emphasis added). Accordingly, while the violation of MRPC 1.8(c) is clearly unethical conduct, it is not *clearly* conduct against public policy. Moreover, as noted in the commentary to MRPC 1.0:

> The Rules of Professional Conduct are rules of reason. . . . Some of the rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. . . .
>
> * * *
>
> . . . [A] violation of a rule does not . . . create any presumption that a legal duty has been breached. . . . The fact that a rule is a just basis . . . for sanctioning a lawyer under the administration of a disciplinary authority[] does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.

These limitations noted in the commentary to MRPC 1.0 and in *Terrien* (that a violation of the MRPC *may* constitute a definitive indicator of public policy) are important considerations in the instant case, because contracts, the legal instrument at issue in *Lizza*, are distinctly different from trusts and wills, which are at issue in this case.

A will is generally *not* a contract. 1 Williston, Contracts (4th ed), § 1.7, p 48. The nature of wills and contracts are essentially different, most notably in that they derive their binding force from differing sources. Finburg, *Wills—As Distinguished from Common Law Contracts*, 16 BU L Rev 269, 272 (1936). Whereas a contract is "an agreement between parties for the doing or not doing of some particular thing and derives its binding force from the meeting of the minds of the parties," 95 CJS, Wills, § 188, p 185, a will is "a unilateral disposition of property acquiring binding force only at the death of the testator and then from the fact that it is his or her last expressed purpose, and a will, although absolute and unconditional, cannot be termed a contract." *Id*. It is this difference that gives rise to the separate and distinct rules applied to interpreting the meaning of wills and contracts. 5 Corbin, Contracts (rev ed), § 24.1, p 6. Whereas, with most contracts, at least two participants play a role in the formation and performance, each party choosing some of the symbols of expression, and each giving those symbols a meaning that may differ materially from the meaning given to them by the other party

to the contract, a will, made for the purpose of affecting the disposition of property by stating the desire of the testator, requires courts to give legal operation to the meaning of the symbols of expression of only one person—the testator. *Id*. Thus, while a court must interpret contracts in light of the intent of all of the contracting parties, in the making of a will, the testator requires no other person's understanding or assent. *Id*. ("No one is asked to make a return promise, to render an executed consideration, or to do any other act in reliance. . . . [T]hese factors enter largely into the making and performance of a contract. The result is that the court must determine, in accordance with applicable contract law, which party's meaning is to prevail, a determination far less simple than in the case of a will.").

While trusts and wills "are not the same, and different legal rules govern each," 90 CJS, Trusts, § 1, p 130, under Michigan law, courts apply the same rules of interpretation to trusts and wills, *Reisman*, 266 Mich App at 526. The primary goal of interpreting wills is to give effect to the testator's intent as long as it is lawful. See *Wanstead v Fisher*, 278 Mich 68, 73; 270 NW 218 (1936) ("It is elementary that the cardinal principle in the interpretation of wills is to carry out the intention of the testator if it is lawful and can be discovered; and that the whole will is to be taken together and is to be so construed as to give effect if it be possible to the whole."); *Sondheim v Fechenbach*, 137 Mich 384, 387-388; 100 NW 586 (1904) ("The general rule for the interpretation of wills is that it is the duty of courts to give full and complete effect to the testator's intention, and carry out such intention if it be lawful." (citation and quotation marks omitted)). Similarly, in interpreting trusts, "the probate court's objective is to ascertain and give effect to the intent of the settlor." *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013). The devises to the appellant and his children are not, on their face, unlawful devises. Thus, they can only be invalidated as unlawful *if* they are definitively against public policy. No statute, including MCL 700.7410(1) and MCL 700.2705, renders these devises as definitively contrary to public policy. The decedent's purported intent, to transfer assets to appellant and appellant's children, is not per se unlawful, as demonstrated by the fact that, had an independent attorney drafted the documents rather than appellant, there was nothing illegal about the devises. Rather than the purpose of the devises being illegal, it is the fact that the person drafting the documents did so contrary to the letter and spirit of the rules of professional conduct that raises suspicion of the validity of the devises.[4]

In sum, there are valid policy reasons why our Supreme Court could reembrace the rule enunciated in *Powers* and conclude that it is appropriate to treat a trust or will, drafted in clear violation of the MRPC, differently than a contract drafted in violation of the MRPC would be treated. In the case of a contract deemed void as against public policy because it violates the MRPC, it is principally the drafting lawyer who suffers the consequence of the invalid contract. However, where a trust or will is deemed void as against public policy because the drafting attorney violated the MRPC, the invalidation of the bequest potentially fails to honor the actual

---

[4] Even this Court's opinion in *Karabatian's Estate v Hnot*, 17 Mich App 541, 546-547; 170 NW2d 166 (1969), which did not follow *Powers* in concluding that the bequest to the scrivener was void as contrary to public policy, nevertheless, acknowledged that there was no statute to invalidate a bequest to a scrivener.

and sincere desires of the grantor. Thus, as noted in *Powers*, the proper remedy for the rule violation may be to follow the normal procedures intended to effectuate the grantor's intent, but to also view the devises to the drafting attorney and his family with suspicion, by application of the presumption of undue influence, rather than to declare the devises void on their face. *Powers*, 375 Mich at 179; *id*. at 180-181 (SOURIS, J., concurring in reversal and remand). As explained below, if appellant can rebut the presumption of undue influence with competent evidence, then the devises should be enforced.

### D. APPLICABLE LAW SUGGESTS THAT A PRESUMPTION OF UNDUE INFLUENCE MUST BE REBUTTED TO AVOID THE INVALIDATION OF A DEVISE DRAFTED UNDER THE FACTS OF THIS CASE

Finally, the statutory scheme provided by the Legislature suggests that the contestant of a trust or will must establish, *inter alia*, undue influence in order to invalidate the trust or will. MCL 700.2501 provides as follows:

> (1) An individual 18 years of age or older who has sufficient mental capacity may make a will.

> (2) An individual has sufficient mental capacity to make a will if all of the following requirements are met:

> (a) The individual has the ability to understand that he or she is providing for the disposition of his or her property after death.

> (b) The individual has the ability to know the nature and extent of his or her property.

> (c) The individual knows the natural objects of his or her bounty.

> (d) The individual has the ability to understand in a reasonable manner the general nature and effect of his or her act in signing the will.

The right to contest a will is statutory and "[a] contestant of a will has the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation." MCL 700.3407(1)(c). That is, the testator's capacity to make a will is presumed. See also *In re Skoog's Estate,* 373 Mich 27, 30; 127 NW2d 888 (1964). And whether a testator had the requisite testamentary capacity "is judged as of the time of the execution of the instrument, and not before or after, except as the condition before or after is competently related to the time of execution." *Powers*, 375 Mich at 158. Similarly, "[a] trust is created only if . . . [t]he settlor has capacity to create a trust" and "[t]he settlor indicates an intention to create the trust." MCL 700.7402(1)(a)-(b). "A trust is void to the extent its creation was induced by fraud, duress, or undue influence." MCL 700.7406.

"To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will." *In re Estate of Karmey*, 468 Mich 68, 75; 658 NW2d 796 (2003) (citation and quotation marks

omitted). Motive, opportunity, or the ability to control, without proof that it was exercised, is insufficient to establish undue influence. *Id*. (citation omitted). However, as previously discussed, in certain circumstances, undue influence is presumed:

> A presumption of undue influence arises upon the introduction of evidence that would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary, or an interest represented by the fiduciary, benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*In re Estate of Erickson*, 202 Mich App 329, 331; 508 NW2d 181 (1993) (citation omitted).]

As this Court has further explained:

> The establishment of this presumption creates a "mandatory inference" of undue influence, shifting the burden of going forward with contrary evidence onto the person contesting the claim of undue influence. However, the burden of persuasion remains with the party asserting such. If the defending party fails to present evidence to rebut the presumption, the proponent has satisfied the burden of persuasion. [*In re Estate of Mikeska*, 140 Mich App 116, 121; 362 NW2d 906 (1985) (citation omitted).]

The framework adopted by our Legislature attempts both to honor the actual intent of the grantor while also protecting against abuse. Because appellant was the decedent's fiduciary, he benefited from the transaction with decedent, and, as the drafter of the documents, he had an opportunity to influence the decedent's decision in that transaction, it is presumed he exerted undue influence in securing the devises at issue. However, case law and existing statutes afford appellant the opportunity to attempt to prove by competent evidence that the presumption of undue influence should be set aside, and that in fact the devises represent the unfettered and uninfluenced intent of the decedent.

## IV. CONCLUSION

Based on the binding precedent of our Supreme Court in *Powers*, and for the above-stated reasons, we reverse and remand to the Charlevoix County Probate Court for proceedings consistent with this opinion. As the prevailing party, appellant may tax costs pursuant to MCR 7.219.

/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens

-8-