# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID ALVAREZ and ELENA ALVAREZ,

       Plaintiff-Appellants,

v

LTF CLUB OPERATIONS COMPANY INC.,
doing business as LIFETIME FITNESS CENTER,

       Defendant-Appellee,

and

JANE DOE,

       Defendant.

UNPUBLISHED
November 29, 2016

No. 328221
Oakland Circuit Court
LC No. 2014-140282-NO

---

DAVID ALVAREZ and ELENA ALVAREZ,

       Plaintiff-Appellees,

v

LTF CLUB OPERATIONS COMPANY INC.,
doing business as LIFETIME FITNESS CENTER,

       Defendant-Appellant,

and

JANE DOE,

       Defendant.

No. 328985
Oakland Circuit Court
LC No. 2014-140282-NO

---

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

-1-

In Docket No. 328221, plaintiffs, David Alvarez and his wife Elena Alvarez, appeal as of right the trial court's order granting summary disposition in favor of defendant, LTF Club Operations Company, Inc., doing business as Lifetime Fitness Center (Lifetime). In Docket No. 328985, Lifetime appeals as of right the order denying its request for case evaluation sanctions and for taxation of costs. For the reasons stated herein, we reverse the trial court's order granting defendant's motion for summary disposition and remand for further proceedings.

This litigation arises from David's fall from a rock climbing wall at Lifetime's facility in Novi. Plaintiffs were at Lifetime, where they are members, with their minor daughter to allow her the opportunity to use the rock climbing wall. Neither the plaintiffs, nor their daughter, had previously attempted to use the rock climbing wall. After David signed the requisite forms, Karina Montes Agredano, a Lifetime employee, provided David with a harness, he climbed to the top of the rock wall, and attempted to lower himself back down via the automatic belay system. However, because David's harness was on backwards and incorrectly hooked to the belay system, it broke and he fell to the ground suffering multiple injuries.

Plaintiffs argued that, as an employee of Lifetime, Agredano was grossly negligent[1] in failing to ascertain whether David had properly attached his harness and the belay system before permitting him to climb the rock wall or descend. Defendant filed a motion for summary disposition arguing the assumption of risk and waiver of liability provision within the paperwork David signed barred plaintiffs' claims because Agredano's asserted conduct constituted only ordinary negligence and not gross negligence. The trial court granted defendant's motion for summary disposition finding plaintiffs failed to "present any evidence establishing that defendant was grossly negligent in failing to take precautions for plaintiff's safety."

Plaintiffs assert that the trial court erred in dismissing their claim of gross negligence against Lifetime, arguing a genuine issue of material fact exists regarding whether Agredano was grossly negligent. We agree.

The trial court granted summary disposition in accordance with MCR 2.116(C)(7) and (10). This Court reviews "de novo a trial court's ruling on a motion for summary disposition." *In re Mardigian Estate*, 312 Mich App 553, 557; 879 NW2d 313 (2015). Specifically:

> When considering a motion for summary disposition under MCR 2.116(C)(10), a court must view the evidence submitted in the light most favorable to the party opposing the motion. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the evidence submitted might permit inferences contrary to the facts as asserted by the movant. When entertaining a summary disposition motion under Subrule (C)(10), the court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and refrain from making credibility determinations or weighing

---

[1] Plaintiffs had signed a waiver of any negligence based liability.

the evidence. [*Id.* at 557-558, quoting *Dillard v Schlussel*, 308 Mich App 429, 444-445; 865 NW2d 648 (2014) (quotation marks omitted).]

In addition:

> In determining whether a party is entitled to judgment as a matter of law pursuant to MCR 2.116(C)(7), a court must accept as true a plaintiff's well-pleaded factual allegations, affidavits, or other documentary evidence and construe them in the plaintiff's favor. Where there are no factual disputes and reasonable minds cannot differ on the legal effect of the facts, the decision regarding whether a plaintiff's claim is barred by the statute of limitations is a question of law that this Court reviews de novo. [*Terrace Land Dev Corp v Seeligson & Jordan*, 250 Mich App 452, 455; 647 NW2d 524 (2002) (citation omitted).]

To establish a claim for gross negligence, it is incumbent on a plaintiff to demonstrate that the defendant acted or engaged in "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003) (citations omitted). "Evidence of ordinary negligence is insufficient to create a material question of fact regarding the existence of gross negligence." *Woodman v Kera, LLC*, 280 Mich App 125, 152; 760 NW2d 641 (2008), aff'd 486 Mich 228 (2010). "The issue of gross negligence may be determined by summary disposition only where reasonable minds could not differ." *Id.* "Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). However, gross negligence will often be exhibited by a "willful disregard of precautions or measures to attend to safety[.]" *Id.*

As evidence of Agredano's gross negligence, plaintiffs offered their deposition testimony. In his deposition testimony, David indicated that Agredano provided him with a harness and was present as he put it on and prepared to climb the wall:

> *Q.* And where was [Agredano] when you were placing the harness on yourself?
>
> *A.* She was in front of us. We were here. She was in front of us.
>
> *Q.* So she's staring directly at your as you're putting the harness on?
>
> *A.* She was, yeah, in front of us. We were here, and she was – I mean, we could show the picture if you want.
>
> *Q.* But I want to know if she was facing you when you were putting this harness on?
>
> *A.* Yes.

* * *

*Q*. How much time elapsed between the time that you had your harness on and began climbing from the time when your wife began climbing?

*A*. Okay. So they walked over to the wall, and then, as soon as I put on my harness, I walked over to the wall adjacent to [Agredano], and I watched my wife. She was already up the wall. So whatever time it took for her to get up the eight feet, which is probably a couple minutes. I mean, a minute maybe.

*Q*. All right. And when you walked over to the wall, was [Agredano] standing to your right?

*A*. When I walked over to the wall, she was on my right.

*Q*. And would you say she was within three or four feet of you?

*A*. I could touch her. She was right there.

Further, David stated that Agredano spoke to him after he had inadvertently placed the harness on backwards and directed him to a climbing area, but did not warn him that the red loop on his harness should be on his front before he began to climb the wall:

*Q*. When were you told to hook into something between your legs?

*A*. Sure. So I had trouble putting on the harness, right? They walked over to the wall. I followed . . . . I was next to – adjacent to [Agredano] . . . . As my wife started to come down [the rock wall], I asked – I asked, where should I go climb? [Agredano] pointed me over to the other adjacent valet or belay.

*Q*. Belay

*A*. Belay. Then somewhere between there I asked – or I don't know if I asked, but she said, Hook it between your legs. . . .

David also stated that Agredano was present in the climbing wall area during the whole incident and watched him climb the rock wall while wearing the harness incorrectly:

*Q*. And was [Agredano] facing you when you began climbing?

*A*. She was facing both of us.

* * *

*Q*. What I want to know is were [sic] you and your wife on the climbing, and she was behind you looking at the two of you?

*A*. Yeah. She was looking at both of us.

* * *

-4-

*Q.* Was there any point in time, while you were putting on your harness or after you put on your harness, where [Agredano] was inside the wall, through this door?

*A.* No.

*Q.* So she was outside in the climbing wall area with you the entire time?

*A.* Correct.

In Elena's deposition testimony, she testified that Agredano also spoke to David after he reached the top of the rock wall, gave him instructions regarding how to descend, and instructed David to let go of the wall despite his incorrectly worn harness:

*Q.* What happened at that point?

*A.* And he said – he asked her twice how to go down. And he asked her two times, because I remember, like, why he's asking her? . . . So then, when he asked her two times, she said, just let go, and it will bring you down, the automatically thing will bring you down. And she said, I think, you know, push, let go. She said, just let go. Just let go. . . .

While Agredano claimed that she was not in the room when David incorrectly donned his harness and ascended the wall, we must consider the evidence in the light most favorable to plaintiffs and accept their testimony as true. *Terrace Land Dev Corp*, 250 Mich App at 455. David and Elena's deposition testimony was that Agredano was present when David donned his harness and ascended the wall, that she had ample opportunity to determine that David had put his harness on incorrectly, but that she failed to correct his mistake. Further, plaintiffs testified that Agredano watched David climb the wall in an unsafe harness, and directed David to let go of the wall to repel back down to the ground despite the red loop on David's harness indicating that his harness was on backwards. Thus, plaintiffs' testimony allows the inference that Agredano did not simply have the ability to do more to assure David's safe climb. Instead, accepting plaintiffs' testimony as true, evidence exists that Agredano ignored the red loop in David's harness—a clear visible indication[2] that David was climbing the rock wall in an unsafe manner—and took no steps to avoid the known danger associated with climbing the rock wall with an improperly secured harness. Thus, Agredano's alleged failure to affirmatively instruct David on the proper way to wear the harness before he donned it himself, coupled with her alleged disregard for the red loop warning sign that David had his harness on backwards, and instructing him to push off the wall, could demonstrate to a reasonable juror that she "simply did not care about the safety or welfare of" David. *Tarlea*, 263 Mich App at 90. Accordingly, reasonable minds could differ regarding whether Agredano's conduct constituted gross negligence. Thus, the trial court erred in granting defendant's motion for summary disposition.

---

[2] Agredano testified that if someone was standing below a rock climber, that person would be readily able to see if a harness was on backwards.

Because we have concluded that the trial court erred in granting summary disposition to defendant, it is unnecessary for us to address in Docket No. 328985 whether the decision to deny the case evaluation award would otherwise have been appropriate if the grant of summary disposition had been proper.

We reverse the order granting defendant's motion for summary disposition and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello