S T A T E   O F   M I C H I G A N
C O U R T   O F   A P P E A L S

*In re* Estate of EUGENIE DIETRICH.

PETER DIETRICH, Co-Personal Representative,

        Petitioner-Appellant,

v

RENEE DIETRICH,

        Intervenor,

and

RACQUEL DIETRICH, Co-Personal
Representative,

        Intervenor-Appellee.

UNPUBLISHED
October 17, 2017

No.   332751
Macomb Probate Court
LC No.   2015-217268-DE

Before:  SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Appellant Peter Dietrich appeals as of right an opinion and order admitting the will of Eugenie Dietrich to probate and determining that intervenors Renee Dietrich and Racquel Dietrich should each receive a share in the estate under the anti-lapse provisions of MCL 700.2603.  Because Renee and Racquel are entitled to inherit the portion of Eugenie's estate willed to their deceased father, we affirm.

Testator Eugenie Dietrich executed her will on March 8, 1989.  Aside from allowing for payments of debts and various expenses, Eugenie bequeathed her entire estate to her "beloved husband, Rudi H. Dietrich."  In the event that Rudi predeceased her, Eugenie's will provided that her estate would pass to her sons, Peter Dietrich and Johann Dietrich.  Specifically, the third paragraph of the will states:

> THIRD, In the event of the death of Rudi H. Dietrich, my husband, before my death, then and in that case I give, devise and bequeath all the rest and residue of

my property, both real and personal, of whatsoever kind and nature it may be, that I may die possessed of, to Peter R. Dietrich and Johann H. Dietrich, my sons, to be divided between them in equal shares, share and share alike.

Eugenie died on November 9, 2014. Rudi predeceased her. Johann also predeceased her, leaving Peter as Eugenie's sole surviving child. However, Johann had two surviving children, Renee and Racquel.

In July of 2015, Peter filed a petition for probate and to appoint a personal representative. Peter's petition also requested judicial interpretation of Eugenie's will. On February 10, 2016, the probate court issued an opinion and order admitting Eugenie's will to probate and determining that the portion of the estate bequeathed to Johann should pass to his children. Peter now appeals as of right.

The issue before us is what should happen to Johann's portion of the estate. Peter argues that Eugenie's will created a class gift for her sons, such that Johann's portion should be distributed among the surviving class members—namely, Peter. In contrast, Racquel contends—and the probate court concluded—that Eugenie did not create a class gift, but instead designated Johann and Peter as individual beneficiaries. Absent language providing for an alternate devise in the event of Johann's death, Racquel asserts—and the probate court concluded—that the anti-lapse provisions found in MCL 700.2603 apply, meaning that Johann's share in the estate passes to his children, Renee and Racquel.

This Court reviews the proper interpretation of wills and statutes de novo. *In re Mardigian Estate*, 312 Mich App 553, 558; 879 NW2d 313 (2015). The primary goal when construing a will is to determine the intent of the testator. *In re Estate of Raymond*, 483 Mich 48, 52; 764 NW2d 1 (2009) (plurality opinion). In doing so, this Court looks to the plain terms of the will and enforces it as written. *Id*. "The will must be read as a whole and harmonized, if possible, with the intent expressed in the document." *Id*. If the terms of the will are ambiguous, extrinsic evidence may be considered to determine the testator's intent. *Id*.

In this case, Eugenie clearly intended that, in the event Rudi predeceased her, her estate should pass to her sons, Peter and Johann. The main issue of contention between the parties is whether, in doing so, Eugenie created a class gift for her "sons" or whether she made individual bequests to Peter and Johann. This point is significant on the facts of this case because there is caselaw stating that "a class gift that directs that a devise be divided 'share and share alike' indicates the testator's intent to create an equal division among the members of the class, whose members are usually related to the testator in equal degrees, using a per capita distribution." *In re Estate of Raymond*, 276 Mich App 22, 29; 739 NW2d 889 (2007). Under this per capita distribution approach, in the event that someone in the class predeceases the testator, the surviving class members share the devise, shutting out any claims by the descendants of the predeceased class members. *Id*. at 29-30.

This intent, while enforceable, is contrary to the statutory presumption, as expressed in the anti-lapse statute, that a testator would want the descendants of certain family members to receive that family member's bequest in the event that the family member predeceases the testator. MCL 700.2603.[1] See also *In re Estate of Fitzpatrick*, 159 Mich App 120, 126; 406 NW2d 483 (1987) (considering a previous version of a comparable anti-lapse statute). In short, given the language of the will, the parties debate whether Eugenie intended for the anti-lapse statute to apply in the event that one of her sons predeceased her or whether she created a class gift subject to per capita distribution such that Peter has been expressly designated as the devisee to receive Johann's share of the estate. See MCL 700.2603(1)(d). Considering the plain language of the will, we agree with the probate court's conclusions (1) that Eugenie made

---

[1] MCL 700.2603(1) states:

(1) If a devisee fails to survive the testator and is a grandparent, a grandparent's descendant, or a stepchild of either the testator or the donor of a power of appointment exercised by the testator's will, the following apply:

(a) Except as provided in subdivision (d), if the devise is not in the form of a class gift and the deceased devisee leaves surviving descendants, a substitute gift is created in the devisee's surviving descendants. Those surviving descendants take by representation the property to which the devisee would have been entitled had the devisee survived the testator.

(b) Except as provided in subdivision (d), if the devise is in the form of a class gift, other than a devise to "issue", "descendants", "heirs of the body", "heirs", "next of kin", "relatives", or "family", or to a class described by language of similar import, a substitute gift is created in the surviving descendants of a deceased devisee. The property to which the devisee would have been entitled had all class members survived the testator passes to the surviving devisees and the deceased devisees' surviving descendants. Each surviving devisee takes the share to which he or she would have been entitled had the deceased devisees survived the testator. Each deceased devisee's surviving descendants who are substituted for the deceased devisee take by representation the share to which the deceased devisee would have been entitled had the deceased devisee survived the testator. For the purposes of this subdivision, "deceased devisee" means a class member who fails to survive the testator and leaves 1 or more surviving descendants.

* * *

(d) If the will creates an alternative devise with respect to a devise for which a substitute gift is created by subdivision (a) or (b), the substitute gift is superseded by the alternative devise only if an expressly designated devisee of the alternative devise is entitled to take under the will.

individual gifts to Peter and Johann and (2) that Eugenie intended the anti-lapse statute to apply such that Johann's share passes to his children.

In general, a "class gift" refers to "[a] gift to a group of persons, uncertain in number at the time of the gift but to be ascertained at a future time, who are all to take in definite proportions, the share of each being dependent on the ultimate number in the group." *Black's Law Dictionary* (10th ed.). "In determining whether a class gift was created we must look to the intention of the testator." *In re Brown's Estate*, 324 Mich 264, 267; 36 NW2d 912 (1949). "The decisive inquiry is whether or not the testator, in making the particular gift in question, did so with 'groupmindedness,' whether, in other words, he was looking to the body of persons in question as a whole or unit rather than to the individual members of the group as individuals." *Id.* (citation omitted).

The fact that beneficiaries are identified by name—even if they constitute a natural class—is generally seen as indicative of an intent to make a gift to the beneficiaries individually as opposed to creating a class.[2] *Id.* at 268; *Cattell v Evans*, 301 Mich 708, 711; 4 NW2d 67 (1942); *Hatt v Green*, 180 Mich 383, 390; 147 NW 593 (1914). Aside from the naming of beneficiaries, other relevant considerations include whether or not the will contains survivorship language, requiring a beneficiary to survive to inherit. See *In re Estate of Raymond*, 483 Mich at 53; *In re Hicks' Estate*, 345 Mich at 451. Generally, the absence of survivorship language supports a finding of individual bequests. *Cattell*, 301 Mich at 711; *In re Coots' Estate*, 253 Mich 208, 212; 234 NW 141 (1931). It may also be relevant whether the beneficiaries share common attributes, whether the group is defined to eject or to admit others, and whether the will intentionally omits anyone from inheriting. *Cattell*, 301 Mich at 711-712; *In re Hunter's Estate*, 212 Mich 380, 383; 180 NW 364 (1920). The creation of individual gifts may be supported by language that divides an estate into specific shares for distribution, such as when the testator leaves "equal shares" to named remaindermen, *In re Coots' Estate*, 253 Mich at 211-212; *In re Hicks' Estate*, 345 Mich at 451, or provides that named individuals shall "share and share alike," *In re Brown's Estate*, 324 Mich at 268. When the testator has made individual gifts without providing for the possibility that a beneficiary might predecease him or her, the "testator must be deemed to have intended that future eventualities which would change the plan as written should be taken care of by the law." *In re Coots' Estate*, 253 Mich at 212. See also *In re Brown's Estate*, 324 Mich at 268; *In re Burruss Estate*, 152 Mich App 660, 665; 394 NW2d 466 (1986).

In this case, considering the plain language of the will, we agree with the probate court's determination that Eugenie did not create a class gift. Significantly, in the will, Peter and Johann are expressly identified by name, which strongly supports the conclusion that Eugenie intended for them to share in the estate as individuals. Cf. *In re Brown's Estate*, 324 Mich at 268; *Cattell*,

---

[2] Designation of individuals by name does not necessarily rule out the creation of a class gift, *Matter of Estate of Roach*, 166 Mich App 519, 524; 420 NW2d 847 (1988); but, to find a class gift notwithstanding individual naming of beneficiaries, there must be "other factors indicating an intent by the testators to give to a class," *In re Hicks' Estate*, 345 Mich 448, 451-452; 75 NW2d 819 (1956). See also *In re Ives' Estate*, 182 Mich 699, 706; 148 NW 727 (1914).

301 Mich at 711-712. This intention is confirmed by the absence of language requiring them to survive Eugenie to inherit. Cf. *In re Coots' Estate*, 253 Mich at 211-212; *Cattell*, 301 Mich at 711. The absence of survivorship language is particularly notable because Eugenie did, to some extent, contemplate contingencies and eventualities insofar as Rudi was the primary beneficiary of her will and Eugenie's will provided for the possibility that he might predecease her. While Rudi had to survive to inherit under the will, no similar condition was placed on Peter or Johann. Instead, Eugenie's final instruction, in the event that Rudi died, was for the estate to be divided between Johann and Peter in "equal shares, share and share alike." See *In re Brown's Estate*, 324 Mich at 268; *In re Coots' Estate*, 253 Mich at 211-212; *Cattell*, 301 Mich at 711. When these provisions are considered together, particularly given the fact that Peter and Johann are identified by name, the will makes plain that Eugenie intended that Peter and Johann would take personally in the event that Rudi predeceased her.

Indeed, the language in this case is strikingly similar to the language at issue in *In re Brown's Estate*, wherein our Supreme Court considered whether a class gift was created by a devise, "unto my two sisters namely, Mrs. Sarah Fitsimmons, and Mrs. Mariah Hamilton both of Portadown, County of Armagh, Northern Ireland. [sic] my estate, each to share and share alike." *In re Brown's Estate*, 324 Mich at 266. As in this case, in *In re Brown's Estate*, one of the beneficiaries claimed entitlement to the whole estate based on the argument that a class gift had been created and the other beneficiary had predeceased the testator. *Id.* at 267. In rejecting this argument and concluding that the sisters took as individuals, not as a class, the Court explained that:

> the use of the words 'to share and share alike' are demonstrative of an intention to bequeath an individual gift and where the testator refers to a group of beneficiaries by their names, there is a decided tendency to regard the gift as prima facie one to individuals rather than one to a class. [*Id*. at 268 (quotation marks and citations omitted).]

Based on this reasoning, the Court concluded that the testator intended the devisees to "take as tenants in common and not as a class." *Id*. at 268-269. We fail to see any meaningful distinction between the language in *In re Brown's Estate* and the present case; and, following the reasoning in *In re Brown's Estate*, we conclude that Eugenie did not create a class gift to her sons.[3] Rather, she made individual bequests to Peter and Johann.

---

[3] On appeal, Peter emphasizes that he and Johann are both Eugenie's sons, meaning that they share common attributes and form a natural class. Moreover, while the will identifies Peter and Johann by name, it also refers to them as Eugenie's "sons." Although the fact that they form a natural class might weigh in favor of finding a class gift, when the will is considered as a whole, we are not persuaded that this was Eugenie's intent. Instead, it appears that, just as Eugenie identified Rudi as her "beloved husband," she identified Johann and Peter as her "sons" as simply a means of identification. Cf. *Belardo v Belardo*, 187 Ohio App 3d 9, 14; 930 NE2d 862 (2010). As a comparison, in *In re Brown's Estate*, 324 Mich at 266-267, the beneficiaries were

In considering the will, it is also clear that Eugenie failed to provide for an alternative devise in the event that one, or both her sons, should predecease her. See MCL 700.2603(1)(d). Given her failure to provide for such a contingency, it must be concluded that Eugenie intended for any future eventualities to be taken care of by the law. See *In re Coots' Estate*, 253 Mich at 212. In other words, Johann's share is disposed of by application of the anti-lapse statute. Under the anti-lapse statute, given that this case did not involve a class gift, Racquel and Renee inherit Johann's share pursuant to MCL 700.2603(1)(a). Accordingly, the trial court did not err by concluding that, under the plain terms of Eugenie's will, the anti-lapse statute applied, entitling Johann's children to his share of the estate.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly

---

identified as "sisters" of the decedent; but, considering the will as a whole, this did not alter the conclusion that the sisters inherited as individuals, not a class.