## FISH *v.* STILSON.

1. Appeal and Error—Chancery Cases—Findings.

The Supreme Court does not enjoy a trial court's advantage of seeing and hearing the witnesses in a chancery case, hence, accords great weight to findings of fact made therein by a trial court, where the testimony is in dispute.

2. Deeds—Wills—Mental Competency.

A will or conveyance of property is valid, irrespective of the temporary incompetence of the person who executed it before or after the instrument was executed.

3. Same — Discharge of Mortgage — Mental Competency — Evidence.

Evidence presented in administrator's suit to set aside conveyances by decedent to his housekeeper of 2 properties and the discharge of a mortgage in her favor *held*, to support finding of the trial court that decedent had the necessary mental capacity at time the instruments were executed, notwithstanding numerous intermittent occasions when he was out of touch with reality, and that fraud, duress and undue influence were not shown.

Appeal from Genesee; Roth (Stephen J.), J. Submitted April 10, 1958. (Docket No. 35, Calendar No. 46,893.) Decided June 11, 1958.

Bill by Flora Fish, individually and as administratrix of the estate of Fred W. McCann, deceased, and other heirs against Maud Stilson, Oliver Morse, Melissa Morse, Robert Harris Stilson, Vernard McComb Stilson, Theodore Stilson, Jr., and Vernon

---

References for Points in Headnotes
[1] 3 Am Jur, Appeal and Error §§ 896, 901.
[2, 3] 57 Am Jur, Wills § 78.

State Bank to set aside deeds and discharge of mortgage by deceased because of alleged undue influence and incompetency and to set aside subsequent transactions. Bill dismissed. Plaintiffs appeal. Affirmed.

*Clifford B. Dye,* for plaintiffs.

*Bellairs & Dean,* for defendants Stilson.

*Neithercut & Neithercut* (*Charles S. Neithercut,* of counsel), for defendants Morse and Vernon State Bank.

BLACK, J. Fred W. McCann, an elderly and—in declining years—physically-infirm resident of the Genesee county village of Gaines, died August 5, 1952. By deed dated April 15, 1950, Mr. McCann conveyed to defendant Maud Stilson certain old "hotel property" in Gaines. By another deed dated July 18, 1952, Mr. McCann conveyed his homestead farm property (situated at outskirts of Gaines) to said Maud Stilson. Also, and in May of 1952, Mr. McCann executed a discharge of mortgage in favor of said Maud Stilson, thereby releasing an obligation of approximately $3,650. The farm property was appraised as of the time of trial at upwards of $15,000 and the hotel property at upwards of $5,000.

Following Mr. McCann's death his heirs-at-law and fiduciary commenced this suit to set aside the mentioned conveyances and discharge, assigning undue influence on the part of said Maud Stilson and mental incapacity of Mr. McCann as reasons for relief. The case came to extended trial in the Genesee circuit and resulted in an opinion of the trial chancellor ruling that plaintiffs had failed to sustain the material allegations of their bill. Decree entered accordingly. Plaintiffs appeal.

About 10 years prior to his death Mrs. Stilson went to live with Mr. McCann at the farm home. She was a school teacher and continued to teach through the school year ending in June of 1952, meanwhile living with and continuing to look after Mr. McCann as described in the chancellor's opinion (presently quoted). The plaintiff heirs were not close to Mr. McCann. They reside and have resided respectively at Holly (plaintiff Flora Fish), Detroit (plaintiffs Eva Gilbert and Roy McCann), and Jackson (plaintiff Hazel Shaughnessy). Mr. McCann's wife predeceased him. He left no children.

The issue of claimed mental incapacity presents the most serious ground of controversy and we shall confine our attention to it, there being no evidence of substance tending to support the charge of undue influence.

Aside from unimportant points relating to admission and rejection of evidence,* plaintiffs' appeal brings here an issue of fact only. All of the stated questions set up and argued in their brief (aside from the mentioned evidentiary questions) test the preponderance of the evidence and the findings below. The case on review thus becomes one of sifting the testimony and exhibits to determine whether this Court should or should not find the controlling facts contrary to Judge Roth's recorded views.

Of course, and in prologue, it is hardly necessary to repeat that an appellate court sitting in equity examines a sort of sterilized record when it assumes to review questions of fact. Judges may gather apparently sound convictions, as to the fact-right of an

---

* Counsel was permitted, on request, to make a "separate record" under the statute.† For present purposes we have accepted and considered this separate record as part of the duly admitted record of testimony. See, as to practice under such statute, *Serbinoff* v. *Dukas*, 348 Mich 69.

† See CL 1948, § 617.5 (Stat Ann § 27.853).—REPORTER.

equity case, by careful reading and consideration of its transcript, yet convictions so reached are more fruitful of error than would obtain had the judicial reader or readers been able also to see and hear. Such is the advantage a trial chancellor enjoys over reviewing chancellors who must sit apart from the coursing personal lifeblood of a courtroom. We recognize that advantage as we proceed to weigh and examine. Here, in the case before us, conflicting conclusions respecting Mr. McCann's mental condition —particularly in June and July of 1952—may well be reached by reasonable men of the bench, reading as we do this record made by witnesses and exhibits. The letters to which the trial chancellor refers in his opinion, written from time to time by defendant Maud Stilson to plaintiff Eva Gilbert, constitute some if not substantial evidence of an intermittent want of requisite mental capacity on the part of Mr. McCann. On the other hand the disinterested and unimpeached testimony of Mr. McCann's obviously trusted lawyer, he being the scrivener of the principal instrument under attack (the deed made and delivered in June of 1952), tends—in print at least —to disclose that the old gentleman knew exactly what he was doing at the time and that he dictated— with understanding and considerable firmness—that which is subjected to the brunt of plaintiffs' attack. The chancellor below was decisively impressed by such testimony of counsel; also by other proven circumstances—reflected in his opinion—which tend to bend the equity of the case to defendant Stilson's side. These premises considered, is there a reliable guide by which this Court may proceed to decision? We think there is.

The general rule, applicable where mental incapacity in like circumstances is alleged, is this: If the person executing either the will or conveyance in question is shown to be competent at the time of exe-

cution, the instrument is valid irrespective of his temporary condition before or after (*In re Cottrell's Estate*, 235 Mich 627, 631, citing authorities to the point). The rule is applied as a matter of law (*Cottrell* shows this) where convincing, disinterested and unimpeached testimony shows adequate capacity at the time of execution. It may, therefore, be applied when the primary fact-finder views the conflict, of testified aberration before or after and the proof of capacity on the occasion in question, as favoring and hence supporting a finding of understood execution. We in turn may—and should in a case like this —so apply the rule. It is therefore held that the finding below of due mental capacity, to execute and deliver the instrument in question, is amply supported.

Turning now to fact details. The chancellor in circuit analyzed the proofs and rendered his decree pursuant to these findings:

"Letters of Maud Stilson written to some of the plaintiffs during the period October 30, 1951, until sometime in June, 1952, reveal that Fred McCann suffered progressive mental debility associated with senility; and it can be concluded that this condition continued until the time of his death on August 5, 1952. * * *

"The letters conclusively demonstrate that Fred McCann was seriously out of touch with reality on numerous occasions; that he sometimes suffered from delusions; that he indulged in acts which leave no doubt that he was a sick man both mentally and physically. The contents of these same letters demonstrate other matters as well. They show that despite his many failings, Fred McCann intermittently was in contact with reality; that to the last he retained his trait of forcefulness; that he would not relinquish the conduct of most of the affairs of business to anyone, including the defendant Maud Stilson.

"Leaving aside the transactions touched upon by the bill of complaint, there is no showing that Fred McCann, despite his physical and mental failings, ever dealt foolishly with any of his property. It is evident too from these letters that for some time prior to his death, Maud Stilson performed services of a personal and most distasteful character for Fred McCann, and this during a period when the plaintiffs were presumably aware of his condition. There is an absence of showing that they, or any of them, ever offered to undertake his care.

"The testimony of Louis D. McGregor, an attorney who had known Fred McCann for years, and the testimony of Edgar L. McComb, who had also known McCann for years, is pertinent evidence bearing upon the question of McCann's capacity to execute the warranty deed on July 18, 1952. Their testimony supports the position of the defendant, Maud Stilson, that Fred McCann knew what he was about.

"The testimony of the expert witness, Dr. Raymond Jaarsma, while it asserts the proposition that Fred McCann during the period October 30, 1951, until his death, was mentally ill, also admits the possibility of rational, knowledgeable acts by McCann at any time during that period. The contents of the letters, the principal prop of evidence for plaintiffs' allegations of incompetence, justify a conclusion about McCann's general condition favorable to the plaintiffs, but the testimony of their expert witness, and that of Attorney McGregor, strongly supports the conclusion that McCann knowingly disposed of his remaining property by a conveyance to Maud Stilson.

"The court might remark that it was evident from the conduct of the case on both sides that there were other matters which perhaps might have been called to the court's attention in the way of evidence had the rule against matters equally within the knowledge of the deceased* been waived. That, however, was not done, so the court will not conjecture on

---

* See CL 1948, § 617.65 (Stat Ann § 27.914).—REPORTER.

what that possible evidence might have been; but as a result of that, the court is constrained to take that evidence which has been placed before him, and from it draw such inferences as the court feels are justified.

"It is true that in the ordinary case, those persons designated by our laws as heirs are usually the natural objects of the bounty of a deceased. And as most rules, it is supported by reason; and I take it the reason in the ordinary case is that those persons who are designated by law as heirs, as the natural objects of one's bounty, are usually the persons to whom the deceased during his lifetime can look to for such help and assistance, and care, as is required by one advanced in years, and failing in health, both mental and physical; and that generally is the case. In other words, such care is usually supplied by members of his own family. That certainly was not true in this case; and this observation is made without any reflection upon those who are his heirs at law because it appears clear from the testimony of the various witnesses that most of them had their own problems and physical infirmities to take care of.

"With respect to the allegations of undue influence, fraud and duress, the letters which I have pointed to as principal items of evidence on behalf of plaintiffs must be taken, if accepted as evidence, for all their contents. Now, those contents do support the allegations of the plaintiffs with respect to the general mental condition of the deceased, but they show more than that. They demonstrate that to the last, McCann was an individual who did not permit the exercise of domination over him, or influence over him by anyone.

"Those letters demonstrate something else. If the allegations of undue influence, and fraud, and duress,—in other words, the allegations that the defendant, Maud Stilson, was embarked on a scheme of relieving McCann of his property were in fact true, it is unthinkable she would have written the

letters she did write, containing such matters that they contained. Had the defendant Stilson been in the process of denuding McCann of his property, those letters would never have been written to members of his family. Letters of a different type might have been written which would have supported her scheme. In conclusion then the court is constrained to hold that the plaintiffs have failed to sustain their allegations of undue influence, fraud, and duress, and they have failed to sustain their burden with respect to the showing the mental incompetency of the deceased McCann as alleged in their bill of complaint. If a test of the natural object of his bounty were to be surveyed, can it be said that the defendant Stilson, who had looked after the interest and wants of McCann for something like 11 years, and particularly during that period when his physical infirmities were such that he could not properly look after his own person and his own interest of relieving himself, can it be said she was not a proper object of what bounty it was his to command? The evidence indicates otherwise."

No persuasive reason, for disagreement on our part with the quoted findings, has been made to appear. We accordingly affirm the appealed decree, with costs to defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.