# STATE OF MICHIGAN

# COURT OF APPEALS

---

DIANA J. GRENIER and DANIEL A.
WINDSOR, as Co-Conservators for NORMAN J.
WINDSOR, SR., a legally incapacitated person,

      Plaintiffs-Appellees,

v

NORMAN J. WINDSOR, JR.,

      Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No.  321932
Mackinac Circuit Court
LC No.  2012-007344-CH

---

Before:  MARKEY, P.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

Defendant, Norman J. Windsor, Jr., appeals as of right a trial court order denying his motion for reconsideration of a trial court order setting aside two quitclaim deeds, under which Norman J. Windsor, Sr. ("Norman Sr."), transferred property to defendant and himself.  We affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

In November 2012, plaintiffs Diana J. Grenier and Daniel A. Windsor,[1] who are siblings as well as co-guardians and co-conservators of their father, Norman Sr., filed a complaint against defendant, who is plaintiffs' brother.  The complaint alleged that the defendant fraudulently induced 85-year-old Norman Sr. to execute two deeds that altered Norman Sr.'s ownership of property, in defendant's favor, at a time when Norman Sr. lacked the mental capacity to make the transfers.  The deeds were executed on November 7, 2011.

At a bench trial to determine whether Norman Sr. possessed the requisite mental capacity to execute the deeds, Norman Sr.'s family physician testified that Norman Sr. undoubtedly displayed signs of dementia in April 2011.  Likewise, plaintiffs testified regarding multiple incidents occurring before and after November 2011 that illustrated Norman Sr.'s progressive

---

[1] Because several parties and witnesses share the last name "Windsor," we will refer to them by their first names.  However, we will refer to defendant Norman J. Windsor, Jr., as "defendant."

-1-

dementia. Plaintiffs also introduced as evidence letters allegedly written by defendant to Central Savings Bank in January 2011 and to Norman Sr.'s physician in March 2011.

In the letter to the bank, defendant asserted that his father lacked the requisite capacity to contract when he signed the papers for a mortgage on a home purchased for Norman Sr.'s son, John Windsor, in 2009. In the letter to Norman Sr.'s physician, defendant claimed that he had observed Norman Sr. exhibit a "total loss of memory" and forget "complete situations and details," thereby implying that John had taken advantage of his father's memory issues and vulnerability, such that Norman Sr. was burdened with a mortgage on a house in which John lived rent-free. Plaintiffs also presented evidence from a pleading in a lawsuit initiated by Soo Co-op Credit Union against Norman Sr. and John for payment of a defaulted revolving loan on which they were cosigners. In particular, the answer filed by Norman Sr. and John identified defendant as Norman Sr.'s power of attorney and indicated that attorney Michael A. Kronk was representing Norman Sr. specifically at the request of defendant. It also stated that, "to the extent to which his Power of Attorney," i.e., defendant, "can ascertain," Norman Sr. "had a diminished capacity to understand the nature of any transactions" as of August 2009, thereby raising an affirmative defense of diminished capacity.

Contrary to plaintiffs' testimony and the documentary evidence, defendant repeatedly insisted at trial that he never thought that his father suffered from dementia. He said that his son, Shawn Windsor, wrote the letters to the bank and the physician in order to help Norman Sr. avoid liability on the mortgage and revolving loan when John stopped making payments on both. Shawn confirmed his involvement in writing the letters in order to help Norman Sr., testifying that he wrote the letter to Norman Sr.'s physician in order to garner support for Norman Sr.'s affirmative defense of diminished capacity in the lawsuit filed by Soo Co-op Credit Union. He admitted writing the letters in defendant's name, forging defendant's signature on the letter to the bank, and simply putting the letter to the physician in front of defendant to sign. Shawn said he did not believe anything in the letters, but wrote them because no one was doing anything to help his grandfather get out from under his debt.

In addition to defendant and Shawn, defendant's daughter, Stephanie Windsor, testified that her grandfather showed no signs of dementia until he moved into an assisted living facility in October 2012. Ron Meister, who assisted Norman Sr. and John with the 2009 mortgage, Amy Radan, who was the branch manager at Norman Sr.'s credit union, and Lori Anderson, who notarized the quitclaim deeds at issue, all stated, either at trial or in their deposition testimony admitted at trial, that Norman Sr. appeared to know what he was doing whenever he interacted with them. However, Radan and Meister remembered occasional incidents when Norman Sr. exhibited memory problems or confusion during their interactions with him.

After observing the witnesses and weighing the evidence, the trial court declared the deeds "a nullity," concluding "that [d]efendant lack[ed] any substantial credibility" and that Norman Sr. was either incompetent to prepare and execute the quitclaim deeds, or suffered from dementia to such an extent that he was "vulnerable to prompting and interference by others." Defendant moved for reconsideration, claiming that plaintiffs' bias against defendant's character had misled the court and that the court failed to properly consider the testimony of Meister, Anderson, Radan, and Stephanie. The trial court denied defendant's motion, but amended its original order to instruct plaintiffs "to conform any deed reformation or [j]udgment to reflect that

the deeds in question be held as any valid Will directs, or in the best interest of justice, given all interested parties' positions of inheritance."

## II. MOTION FOR RECONSIDERATION

First, defendant argues that the trial court erred in denying his motion for reconsideration. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's denial of a motion for reconsideration for an abuse of discretion, which occurs when the trial court's decision "fall[s] outside the range of principled outcomes." *Corporan v Henton*, 282 Mich App 599, 605-606; 766 NW2d 903 (2009). Pursuant to MCR 2.119(F)(3), "[t]he moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." A "palpable" error is an error "[e]asily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, manifest." *Luckow Estate v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011) (quotation marks and citation omitted; alteration in original). In general, a court will not grant a motion for reconsideration that presents the same issues that were already decided by the court. MCR 2.119(F)(3). However, MCR 2.119(F)(3) does not prevent a court from revisiting an issue on which the court previously ruled in order to correct a mistake. *Macomb Co Dep't of Human Servs v Anderson*, 304 Mich App 750, 754; 849 NW2d 408 (2014).

## B. ANALYSIS

The trial court properly denied defendant's motion for reconsideration because defendant failed to identify a palpable error by which the trial court was misled. He alleged no error of law in his motion for reconsideration. Instead, the only "palpable errors" identified by defendant were related to the trial court's findings of fact and unfavorable decision, which arose from the trial court's weighing of the evidence and credibility determinations. In particular, defendant claimed in his motion for reconsideration that the trial court made its decision based on plaintiffs' misleading arguments and presentation of defendant, asserting that the court should reconsider its decision in light of defendant's third-party witnesses (i.e., Meister, Anderson, Radan, and Stephanie), which, according to defendant, provided evidence that was more credible than plaintiffs' testimony that was uncorroborated by third-party witnesses. Likewise, in his brief on appeal, defendant merely rehashes the testimony presented at trial in an attempt to demonstrate that the trial court erred in concluding that the plaintiffs' witnesses were more credible than the defense witnesses, and that the trial court made its decision based on plaintiffs' "misleading" representation of defendant's character and motives.

A review of the record evidence reveals no palpable error related to the trial court's factual findings or credibility determinations. When witnesses testify to "diametrically opposed assertions of fact," it is the role of the trier of fact to determine the witnesses' credibility. *Kalamazoo Co Rd Comm'rs v Bera*, 373 Mich 310, 314; 129 NW2d 427 (1964) (quotation marks and citation omitted); see also *In re Erickson Estate*, 202 Mich App 329, 333; 508 NW2d 181 (1993) ("Where there is evidence pro and con [regarding an individual's mental capacity], much

weight should ordinarily be given to the conclusion reached by the probate judge, who has had the opportunity of seeing and hearing the witnesses."). Because plaintiffs and defendant proffered contradictory evidence relevant to Norman Sr.'s capacity at the time the deeds were executed, the trial court's factual findings necessarily depended on its credibility determinations. As explained *infra*, the trial court's credibility determinations and factual findings were supported by the evidence presented at trial, and there is no indication that the trial court's factual findings were erroneous, or the result of passion or bias, based on the lower court record. See MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."); *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000) (stating that the findings of fact of a court sitting without a jury are reviewed under the clearly erroneous standard). As such, the trial court's denial of defendant's motion for reconsideration did not fall outside the range of reasonable and principled outcomes, *Corporan*, 282 Mich App at 605-606, as defendant failed to demonstrate a palpable error, MCR 2.119(F)(3).

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the trial court's ruling was against the great weight of the evidence. We disagree.

## A. STANDARD OF REVIEW

In general, a defendant must move in the trial court for a new trial on the basis that the verdict was against the great weight of the evidence in order to preserve that claim for appeal. *Heshelman v Lombardi*, 183 Mich App 72, 83; 454 NW2d 603 (1990). See also MCR 2.611(A)(1)(e) (stating that a new trial may be granted when a decision was against the great weight of the evidence); MCR 2.611(B) (stating that motion under MCR 2.611 must be filed and served within 21 days after entry of the judgment). Additionally, this Court has held that a party waives a claim that the verdict was against the great weight of the evidence when he fails to move for a new trial on that basis in the trial court. See, e.g., *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 464; 633 NW2d 418 (2001); *Brown v Swartz Creek Mem Post 3720-Veterans of Foreign Wars, Inc*, 214 Mich App 15, 27; 542 NW2d 588 (1995). However, if a case is tried without a jury, a party need not move for a new trial in the trial court in order to preserve a claim that the verdict was against the great weight of the evidence. MCR 7.211(C)(1)(c); see *People v Ratcliff*, 495 Mich 876; 838 NW2d 687 (2013) ("Because this was a bench trial, the defendant was not required to file a motion to remand to preserve this issue [regarding whether his conviction was against the great weight of the evidence]. MCR 7.211(C)(1)(c).").[2]

---

[2] A Michigan Supreme Court order may constitute binding precedent to the extent that it can be understood as presenting a holding that is based on discernible facts and reasoning. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001). Additionally, other unpublished decisions issued by this Court in civil cases have restated this preservation rule, see,

When a bench trial verdict is challenged on the basis that the verdict was against the great weight of the evidence, we review the trial court's findings of fact for clear error and its conclusions of law de novo. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003), citing MCR 2.613(C); see also *Ambs v Kalamazoo Co Rd Comm'n*, 255 Mich App 637, 652 n 14; 662 NW2d 424 (2003). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 296; 769 NW2d 234 (2009) (quotation marks and citation omitted).

## B. ANALYSIS

As stated *supra*, the trial court's credibility determinations and findings of fact—most significantly, that Norman Sr. lacked the requisite capacity to execute the deeds—were supported by evidence presented at trial and were not clearly erroneous. To execute a valid deed, a grantor must have "sufficient mental capacity to understand the business in which he was engaged, to know and understand the extent and value of his property, and how he wanted to dispose of it, and to keep these facts in his mind long enough to plan and effect the conveyances in question without prompting and interference from others." *Persinger v Holst*, 248 Mich App 499, 503-504; 639 NW2d 594 (2001) (quotation marks and citation omitted); see also *In re Erickson Estate*, 202 Mich App at 332-333. "Where insanity or mental incompetency is claimed, it should be proved by a preponderance of the evidence." *In re Erickson Estate*, 202 Mich App at 333. Although "[l]ack of capacity to execute a deed at a particular time may be proved by the grantor's condition before and after that time, and that prior or subsequent condition may be presumed to exist at the time the deed was made," *Beattie v Bower*, 290 Mich 517, 525; 287 NW 900 (1939), the decedent's capacity at the time of the execution of the instrument is the relevant inquiry. As such, the presumption that a grantor's prior or subsequent condition existed at the time the deed was executed is not applicable if there is credible evidence of the grantor's physical and mental condition at the time of the execution of the deed, *Burmeister v Russell*, 362 Mich 287, 289-290; 106 NW2d 752 (1961), or if "convincing, disinterested and unimpeached testimony shows adequate capacity at the time of execution," *Fish v Stilson*, 352 Mich 437, 440-441; 90 NW2d 509 (1958).

Our review of the record confirms that plaintiffs presented considerable evidence regarding Norman Sr.'s condition before and after his execution of the quitclaim deeds to show that he suffered from progressive dementia. The incidents culminate in the spring of 2012, when Norman Sr. inexplicably spent 24 hours in a canoe, naked, resulting in his hospitalization. The probate court named plaintiffs co-guardians and co-conservators of Norman Sr. in July 2012. Unable to live alone, he moved into an assisted living facility in October 2012. These incidents

---

e.g., *McCalvin v City of Detroit*, unpublished opinion per curiam of the Court of Appeals, issued December 13, 2002 (Docket No. 236973), p 2, and the Michigan Supreme Court recently amended MCR 7.211(C)(1)(c), effective September 1, 2015, to clarify this rule, Administrative Order No. 2013-35. See *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 337-338; 602 NW2d 596 (1999) (discussing the retroactivity of court rule amendments).

suggest a condition that may reasonably be presumed to have existed at the time he executed the deeds.

In contrast, defendant, Shawn, and Stephanie maintained that Norman Sr. did not show signs of diminished capacity prior to the execution of the quitclaim deeds. Similarly, Anderson, Radan, and Meister, all of whom interacted with Norman Sr. in a limited capacity, testified that Norman Sr. appeared to know what he was doing when he interacted with them. However, Radan and Meister both confirmed that Norman Sr. occasionally displayed memory issues or confusion during their interactions, and Shawn, Stephanie, Meister, and Radan had no involvement in the execution of the deeds in November 2011. Further, because none of the disinterested or third-party testimony constituted credible, or "convincing, disinterested and unimpeached," evidence regarding Norman Sr.'s capacity at the time the deeds were executed, the court was permitted to presume that Norman Sr.'s prior or subsequent condition existed at the time of execution. See *Burmeister*, 362 Mich at 290; *Fish*, 352 Mich at 440-441. In fact, the only disinterested or third-party evidence of Norman Sr.'s capacity at the actual time of execution was provided by Anderson,[3] and her testimony was not sufficiently convincing on its own to demonstrate that Norman Sr. had the requisite mental capacity under *Persinger*, 248 Mich App at 503-504. Anderson only minimally conversed with Norman Sr., and she acknowledged that she did not discuss with Norman Sr. the content of the deeds that she was notarizing, Norman Sr.'s other assets, or the impact of the conveyances on Norman Sr.'s estate. Instead, she simply performed the notarization after Norman Sr. stated that he had two deeds that needed to be signed. Likewise, her deposition testimony indicates that her assessment of Norman Sr.'s understanding of the transaction was solely based on his demeanor as he signed the documents, which provides very minimal evidence regarding whether Norman Sr. actually understood the business in which he was engaged, was actually cognizant of the extent and value of his property, and actually appreciated the manner in which he was disposing of it.

Therefore, in considering the entire record, and being mindful of the trial court's superior ability to assess the credibility of the witnesses, *Ambs*, 255 Mich App at 652, we conclude that the trial court's finding that Norman Sr. lacked the requisite mental capacity to validly execute the deeds in November 2011 was not clearly erroneous. Accordingly, we reject defendant's claim that the trial court's ruling was against the great weight of the evidence. *Alan Custom Homes*, 256 Mich App at 512.

## IV. EVIDENTIARY RULING

Lastly, defendant contends that the trial court erred by excluding evidence regarding plaintiffs' compensation from Norman Sr.'s estate for the conservator services that they performed for the estate, which, according to defendant, demonstrated plaintiffs' bias or

---

[3] Defendant also testified regarding Norman Sr.'s capacity at the time of execution, but he is obviously not disinterested in this case, and his testimony was deemed completely incredible by the trial court judge. We must defer to the trial court's credibility determinations. *Ambs*, 255 Mich App at 652 ("An appellate court will give deference to "the trial court's superior ability to judge the credibility of the witnesses who appeared before it.").

pecuniary interest in the case. As such, defendant argues that the court's exclusion of the evidence denied him the opportunity to impeach plaintiffs' credibility. We disagree.

## A. STANDARD OF REVIEW

"[T]he decision to admit or exclude evidence is within the discretion of the trial court, and this Court will not disturb the ruling on appeal in the absence of an abuse of discretion." *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008).

## B. ANALYSIS

Defendant's claim of error arises from the following exchange at trial:

[*Defense Counsel*]: And you and the co-conservator have filed an inventory and an accounting in that case?

[*Plaintiff Daniel*]: Yes.

[*Plaintiffs' Counsel*]: Wherein you have billed your father's estate $35 an hour for the services that you provide to him, correct?

[*Plaintiffs' Counsel*]: Your Honor--

[*Plaintiff Daniel*]: That's a different issue but--

[*Plaintiffs' Counsel*]: I'm going to object to the rele--

[*Plaintiff Daniel*]: But--

*The Court*: Hang on.

[*Plaintiffs' Counsel*]: Relevancy.

*The Court*: Hang on. Hang on.

[*Plaintiff Daniel*]: Um--

*The Court*: Sir! Sir! There's an objection, and where there is an objection, you need to stop talking and let the attorney talk. Okay?

[*Plaintiffs' Counsel*]: But my objection is to relevancy. The--you know, this case is about the, the mental capacity of Mr. Windsor, Senior. I don't know what this has to do with anything. Maybe with an explanation I'd withdraw the objection.

*The Court*: Is there some foundation for it? Because I would tend to agree.

[*Defense Counsel*]: Concern being that, that this asset returned to the estate is simply going to be consumed for services that children should be providing without cost, without charge.

*The Court*: You're saying the $35 an hour that is charged for whatever services are going to dissipate the estate, is that what I understand?

[*Defense Counsel*]: Eventually. Yes.

*The Court*: And that's the sole purpose of eliciting?

[*Defense Counsel*]: It is.

*The Court*: All right. Let's move on.

[*Defense Counsel*]: All right.

As plaintiffs observe on appeal, it is unclear whether the trial court sustained the objection or accepted as true the fact that plaintiff Daniel billed Norman Sr.'s estate $35 per hour for his services. Nevertheless, "it is always permissible upon cross-examination of an adverse witness to pursue facts that may bear on a witness's bias. A witness's credibility is a primary question for the [factfinder] to evaluate, and questions eliciting bias, prejudice, or interest are appropriately allowed within the trial court's discretion." *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625, 653; 705 NW2d 549 (2005) (citations omitted); see also *Powell v St John Hosp*, 241 Mich App 64, 72-74; 614 NW2d 666 (2000) ("Evidence that shows bias or prejudice on the part of a witness is always relevant."). However, even if we assume, arguendo, that the trial court's exclusion of the evidence was erroneous, the error was harmless.

We deem an error harmless if the error is not decisive to the outcome of a case. See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 529; 730 NW2d 481 (2007), lv gtd in part 480 Mich 910 (2007); see also MCR 2.613(A) (stating that an error in the exclusion of evidence does not justify reversal or disturbance of a judgment unless refusing to take such action would be inconsistent with substantial justice). In light of the trial court's response ("*All right*. Let's move on." [Emphasis added.]), it is apparent that the trial court was aware of the theory of bias presented by defendant. As such, we reject defendant's claim that the trial court's exclusion of the testimony "stifled [defendant's] case" and prevented defendant from impeaching plaintiff Daniel's credibility and demonstrating that plaintiff Daniel's purported bias undermined his trustworthiness. Moreover, defendant never asserted that the compensation was exorbitant; he only argued that plaintiff Daniel should have inventoried the estate free of charge because Norman Sr. is his father. However, plaintiff Daniel, as a conservator, was entitled to such payments pursuant to MCL 700.5413 ("If not otherwise compensated for services rendered, a visitor, guardian ad litem, attorney, physician, conservator, or special conservator appointed in a protective proceeding, is entitled to reasonable compensation from the estate."), and we are unable to locate any authority indicating that an exception to that entitlement exists for family members. As such, it is apparent that defendant's reliance on compensation from the estate as an indication of bias was tenuous at best. Given the trial court's strongly worded findings regarding defendant's lack of credibility, we find it extremely unlikely that further evidence regarding the

-8-

compensation that plaintiff Daniel received from the estate would have altered the trial court's credibility determination and affected the outcome of the trial. Thus, the trial court's exclusion of the evidence was harmless and does not justify reversal.

## V. CONCLUSION

The trial court properly denied defendant's motion for reconsideration, and the trial court's conclusion that Norman Sr. lacked the requisite capacity to execute the deeds was not against the great weight of the evidence. Likewise, the trial court's exclusion of evidence regarding the compensation that plaintiff Daniel received from Norman Sr.'s estate does not require reversal.

Affirmed.


/s/ Jane E. Markey
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan