*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* KARL MELNIK REVOCABLE LIVING TRUST.

DEBORAH MOSLING and JUSTIN MOSLING,

        Petitioners-Appellants,

v

MARIANNE MELNIK, successor trustee of the
KARL MELNIK REVOCABLE LIVING TRUST,

        Respondent-Appellee.

UNPUBLISHED
August 11, 2025
2:15 PM

No. 371263
Kent Probate Court
LC No. 23-213451-TV

Before: O'BRIEN, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Petitioners appeal by right the probate court's order granting in part respondent's motion for sanctions and imposing a sanction of $105,136 on petitioners, jointly and severally. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The facts in this case are largely undisputed. Karl Melnik, the grantor of the Karl Melnik Recovable Living Trust (the trust) was in a long-term romantic relationship with petitioner Deborah Mosling for over two decades, from 1996 to 2018, but they were never married. Petitioner Justin Melnik is Deborah's son. In 2015, Melnik amended the trust to add petitioners as beneficiaries to the trust. The relationship between Melnik and Deborah ended in 2018 when Deborah was arrested for elder abuse and removed from Melnik's home in Wisconsin. Melnik then moved to Michigan to live with respondent. In 2019, Melnik amended the trust, removing petitioners as beneficiaries, trustees, or successor trustees of the trust (the amendment). Following that amendment, Deborah sued Melnik in Wisconsin, claiming that she was entitled under Wisconsin law to an equitable share of the assets acquired by Melnik during their relationship. See *Watts v Watts*, 405 NW2d 305; 137 Wis 2d 506 (1987). Deborah did not challenge Melnik's capacity to amend the trust or his ability to understand the nature and extent of his property and

-1-

direct the disposition of it when he died. Melnik defended the suit for over two years, asserting that Deborah had been abusive and affirming his intent not to include Deborah or Justin in his estate plan. In 2022, after Melnik died, Deborah voluntarily dismissed her suit in Wisconsin.

In 2023, petitioners filed a verified petition with the probate court, contesting the validity of the amendment on the grounds that Melnik had lacked sufficient mental capacity to amend the trust in 2019. The petition alleged that Melnik had developed "significant health issues, including diabetes and Alzheimer's dementia or some other similar mental illness" and that "[b]y late 2018, [Melnik's] mental and physical illness became [sic] significant." The petition alleged that Melnik lacked the testamentary capacity to amend the trust on February 26, 2019, and further stated that Melnik had begun suffering from "severe Alzheimer's dementia or some other mentally debilitating illness" in 2018 and had scored 15 points out of a possible 30 on a diagnostic test for mild cognitive impairment administered by his physician in June 2018.

In March 2024, after eight months of discovery, petitioners filed a motion to voluntarily dismiss their suit, stating that the petitioners' belief that Melnik lacked testamentary capacity had been based on the medical records in their possession at the time the verified petition was filed, but that "discovery did not confirm this belief." Petitioners additionally stated that their retained expert witness was unable to conclude with a reasonable degree of certainty that Melnik had lacked testamentary capacity when he amended the trust in 2019, and they requested an order dismissing the case.

Shortly after petitioners filed their motion, respondent filed a motion for sanctions, arguing that the lawsuit was initiated in violation of MCR 1.109 and MCL 600.2591. Specifically, respondent asserted that petitioners knew that there was no evidence that Melnik had lacked testamentary capacity when he amended the trust, and that they possessed this knowledge when they signed the verified petition in 2023. Additionally, respondent asserted that petitioners and their counsel had failed to adequately investigate their claims prior to bringing suit, brought claims that were not well-grounded in fact or law, and brought the suit with the purpose of harassing and injuring respondent. Respondent's motion was accompanied by an email from petitioners' counsel rejecting a settlement counteroffer from respondent. That email contained the following paragraph:

> My client's hope was that a release of potential litigation in Wisconsin would motivate a settlement in this matter. This does not seem to be the case. So my clients are going to dismiss this matter and move forward with filing a lawsuit in Wisconsin unless your client would like to settle this case for an amount closer to my initial offer to avoid protracted litigation in Wisconsin.

Petitioners responded to respondent's motion, arguing that the limited medical records they had in their possession at the time they filed the petition supported their good-faith belief that Melnik lacked the capacity to amend the trust in 2019. These records indicated that Melnik had a history of strokes and suffered from major depressive disorder, a mild cognitive disorder, and a major neurocognitive disorder due to vascular dementia without behavioral disturbance. Petitioners indicated in their response that they only possessed a small portion of Melnik's medical records at the time the petition was filed, and that the records were only from 2018.

The probate court held a hearing on the parties' motions in April 2024. Petitioners' counsel stated at the hearing that, although Melnik's medical records did contain diagnoses of some mental disorders, their expert was unable to discern how those issues would have affected Melnik and his capacity to amend the trust. Petitioner's counsel further stated that when he initiated the case, petitioners only provided him with a small portion of Melnik's records from Wisconsin medical providers, and further that the petitioners had failed to disclose that those medical records had been provided in the Wisconsin lawsuit under a protective order, meaning that they should not have been used in future litigation. Petitioner's counsel argued that the medical records he was given by petitioners were sufficient to "cause us reasonable concern that in 2019, when Karl entered this amendment, he lacked the mental ability to do that," although discovery ultimately proved not to support petitioners' claim. Petitioner's counsel argued that some of the delays in obtaining Melnik's complete medical records were caused by respondent and her counsel, and that petitioners had acted in a timely manner to dismiss the case once they determined the claim was not viable. Petitioner's counsel stated that he believed, in alleging that Melnik suffered from "Alzheimer's dementia," that it was "the proper way to refer to dementia" despite Melnik not having been diagnosed with Alzheimer's Disease.

Regarding the email discussing future Wisconsin litigation, petitioners' counsel stated that he did not intend the email to be threatening or to threaten additional litigation; rather, he believed, based on Deborah's representation that she had been given advice by a Wisconsin attorney, that Deborah had a potentially valid claim that was "some sort of common law marriage thing or just some similar law that they have there." Therefore, according to petitioner's counsel, he merely intended to indicate in the email that petitioners would want more money in return for a settlement that involved the full release of claims in Michigan and Wisconsin.

Respondent argued that petitioners, particularly Deborah, had known Melnik for decades, kept in contact with him until February of 2019, and never expressed a concern for his capacity until after his death in 2022 and the dismissal of the Wisconsin lawsuit. Respondent's counsel noted that petitioners had received many more medical records than they had provided to their Michigan counsel. Further, during the Wisconsin litigation, the issue of Melnik's capacity was never raised. Melnik was deposed twice, and his deposition testimony clearly showed that he understood his finances and property ownership and desired that petitioners not receive any share of his estate. Respondent's counsel also noted that, in the Wisconsin litigation, Deborah had testified under oath that in 2018, Melnik *did* have the capacity to endorse checks made out to her and her family. Petitioners had also admitted in their depositions in this case that they had never formed the belief that Melnik lacked the capacity to amend the trust while Melnik was alive—they only did so after reviewing the medical records. In essence, respondent's counsel argued that petitioners knew at the time they filed the petition that Melnik was not severely cognitively impaired or suffering from dementia in early 2019.

The probate court took both motions under advisement. It subsequently rendered an oral opinion granting petitioners' motion to dismiss and granting respondent's motion for sanctions as to petitioners. The court noted that the medical records from June 2018, which petitioners relied upon for the majority of the medical diagnoses that they had asserted affected Melnik's testamentary capacity, did indicate that Melnik had suffered from "dementia-like symptoms and confusion in 2018," but that petitioners had provided no medical records covering the time period when Melnik amended the trust. Further, the court noted that in their depositions, petitioners could

provide no specific examples of times when they were concerned about Melnik's cognitive capacity or ability to manage his own affairs. The court held that "[p]etitioner's [sic] deposition testimony, which contradicts their interrogatory answers, and the allegations in the petition, indicates that petitioner's [sic] assertions contained in those documents were not well grounded in fact. On [sic] short, petitioners knew or should have known that there was no basis to assert that Karl lacked capacity to make testamentary decisions." The probate court also found that the Michigan litigation was initiated for an improper purpose under MCR 1.109(E)(5)(c). The court ordered sanctions as described, specifically noting that it was sanctioning petitioners themselves, not their counsel. It subsequently entered an order granting both motions as described. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a trial court's finding that an action is frivolous. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW3d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. at 661-662. We review for an abuse of discretion a trial court's award of attorney fees and costs. *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 141; 946 NW2d 812 (2019). We review de novo the interpretation of statutes and court rules. *McGregor v Jones*, 346 Mich App 97, 100; 11 NW3d 97 (2023).

## III. ANALYSIS

Petitioners argue that the probate court erred by determining that their action was frivolous and awarding sanctions. We disagree.

Generally, a trial court may only award costs and attorney fees when specifically authorized by a statute, court rule, or recognized exception to the general rule. *Pioneer State*, 330 Mich App at 146 (citation omitted). MCL 600.2591 and MCR 1.109 grant a trial court the authority to award sanctions for a frivolous action in the form of costs and attorney fees to a prevailing party. See *Pioneer State*, 330 Mich App at 146. MCL 600.2591(3)(a) defines a "frivolous" action or defense to mean that at least one of three conditions has been met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.

MCR 1.109(E) governs signatures of documents filed in a court case, and provides in relevant part:

> (5) *Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
>> (a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(7) *Sanctions for Frivolous Claims and Defenses*. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCR 2.625(A)(2) in turn provides that, for actions filed on or after October 1, 1986, "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591."

"The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." *Pioneer State*, 330 Mich App at 147 (citation omitted). The reasonableness of a party's inquiry into the viability of a claim is "determined by an objective standard and depends on the particular facts and circumstances of the case." *LaRose Mkt, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). The mere fact that a party did not ultimately prevail on a legal position does not automatically render that position frivolous. *Id*. Nor does every error in legal analysis constitute a frivolous legal position. *Kitchen*, 465 Mich at 663. "Moreover, merely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position." See *id*.

"A firmly embedded principle in our jurisprudence is that legal documents must be executed by one possessing the mental competence to reasonably understand the nature and effect of his action." *Persinger v Host*, 248 Mich App 499, 503; 639 NW2d 594 (2001). A person executing a will must have testamentary capacity at the time of execution, i.e., "be able to comprehend the nature and extent of his property, to recall the natural objects of his bounty, and to determine and understand the disposition of property which he desires to make." *In re Sprenger's Estate*, 337 Mich 514, 521; 60 NW2d 436 (1953). "[U]nder Michigan law, courts apply the same rules of interpretation to trusts and wills." *In re Madrigan's Estate*, 312 Mich App 553, 563; 879 NW2d 313 (2015). "[A] trust is created only if the settlor has capacity to create a trust . . . ." *Id*. at 566.

A testator's capacity to make a will is presumed, and it is the party challenging the validity of a testamentary document that bears the burden of showing lack of capacity. See *Id*. at 565, citing MCL 700.3407(1)(c); see also *Sprenger's Estate*, 337 Mich at 521. A testator's testamentary capacity must be judged "as of the time of the execution of the instrument, and not before or after, except as the condition before or after is competently related to the time of execution." *Madrigan's Estate*, 312 Mich App at 565-566. In other words, just because testator lacked capacity before or after the execution of a will does not mean the testator lacked capacity at the time the will was executed. *Fish v Stilson*, 352 Mich 437, 440-441, 90 NW2d 509 (1958). "Weakness of mind and forgetfulness are . . . insufficient of themselves to invalidate a will." *Sprenger's Estate*, 337 Mich at 521. "A testator may be suffering physical ills and some degree of mental disease and still execute a valid will, unless the provisions thereof are affected thereby." *In re Ferguson's Estate,* 239 Mich 616, 627; 215 NW 51 (1927). Indeed, even the appointment of a guardian to protect the testator's property is not probative evidence of a lack of testamentary capacity. *Sprenger's Estate*, 337 Mich at 521.

In this case, the probate court held that petitioners' action was frivolous under MCR 1.109(E)(b) and (c), which correspond to MCL 600.2591(3)(a)(*ii*) and (*i*), respectively. Specifically, the probate court held that at the time they signed the petition, petitioners knew or should have known that there was no basis in fact to assert a claim that Melnik lacked testamentary capacity at the time he amended the trust, and further that petitioners had initiated their action for an improper purpose.

Regarding the probate court's finding that the petitioners knew the petition was not well-grounded in fact when they signed it, petitioners primarily argue on appeal that their *counsel* conducted a reasonable inquiry into the factual basis for the petition before filing it. But their counsel was not sanctioned; petitioners were, individually. The probate court noted that petitioners never raised the issue of Melnik's testamentary capacity in 2019 until after his death in 2022, despite Deborah filing suit against Melnik in Wisconsin and litigating that suit for over two years, during which time Melnik was deposed twice. Moreover, petitioners, in their depositions, could not provide any examples of Melnik being confused or unable to understand his financial affairs; in fact, Deborah testified that Melnik was still capable of making his own decisions after being diagnosed with dementia in 2018, and Justin testified that there was never a point in his relationship with Melnik when Justin believed that Melnik was not capable of making his own financial decisions. Melnik was never diagnosed with Alzheimer's disease and there is no evidence that any medical provider ever questioned his capacity to make decisions regarding his finances, property, or any other aspect of his life. Petitioners relied on a handful of medical records from 2018 to assert that there was at least a question regarding Melnik's capacity to amend the trust in 2019, but their own testimony indicates that they did not personally have any concerns regarding Melnik's ability to manage his affairs while he was alive. The mere fact that Melnik had at some point in his life been diagnosed with a condition that *could* have affected his testamentary capacity was insufficient to support a claim for lack of capacity, see *Ferguson's Estate*, 239 Mich at 627; see also *Fish*, 352 Mich at 440-441, but in this case it was not only insufficient, but it was contradicted by petitioners' own testimony about their own experiences with Melnik. On this record, we cannot say that the probate court clearly erred by holding that petitioners knew or should have known that their verified petition was not well-grounded in fact. MCR 1.109(E)(5)(b); MCL 600.2591(3)(a)(*ii*); *Kitchen*, 465 Mich at 661.

The probable court also found that petitioners had filed their petition for an improper purpose. This finding was based in part on the email from petitioners' counsel referring to possible future litigation in Wisconsin. But the email was sent nearly seven months after the verified petition was filed, and in itself provides little insight into petitioners' motives at the time of signing or filing the verified petition. See *Pioneer State*, 330 Mich App at 147. Moreover, it appears from this record that Justin was not a party to the Wisconsin litigation, and it is unknown whether he would be a party to any future litigation in that state. (See Wisconsin complaint, appellee's appendix 2, p 289). However, the probate court also noted the timing of the various lawsuits and the fact that petitioners, or at least Deborah, appeared to have a habit of voluntarily dismissing one suit only to begin another. Although a closer call, we ultimately are not left with a firm conviction that a mistake was made with respect to Deborah's purpose in filing the petition. *Kitchen*, 465 Mich at 661; MCL 1.109(E)(5)(c); MCL 600.2591(3)(a)(*iii*). With regard to Justin, on this record, it is more arguable that the probate court erred by finding that he had signed or filed the verified petition for an improper purpose. However, any error by the trial court with regard to MCR 1.109(E)(5)(c) and MCL 600.2591(3)(a)(*i*) is harmless in light of the probate court's findings under MCR 1.109(E)(5)(b) and MCL 600.2591(3)(a)(*ii*). See *Kitchen*, 465 Mich at 661.

Affirmed.[1] As the prevailing party, respondent may tax costs. MCR 7.219(A)(1).

/s/ Colleen A. O'Brien
/s/ Mark T. Boonstra
/s/ Randy J. Wallace

---

[1] Petitioners do not challenge the reasonableness of the attorney fee portion of the sanctions against them. Accordingly, we do not disturb the probate court's exercise of its discretion in that regard. *Pioneer State*, 330 Mich App at 146.