*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ESTATE OF LOUIS G. BASSO, JR., also known as LOUIS GABRIEL BASSO.

---

MARY ANGELA BASSO,

Appellant,

v

THOMAS BRENNAN FRASER, Personal Representative of the ESTATE OF LOUIS G. BASSO, JR.,

Appellee.

UNPUBLISHED
May 30, 2019

No. 342370
Oakland Probate Court
LC No. 2015-361584-DE

---

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

Appellant, Mary Angela Basso (Mary)—the eldest child of Louis G. Basso, Jr. (the decedent) and a beneficiary of the Louis G. Basso, Jr., Revocable Living Trust (trust), appeals as of right the probate court's order removing her as personal representative of the decedent's estate, and appointing appellee, Thomas Brennan Fraser (Fraser)—the successor trustee of the trust—as successor personal representative of the decedent's estate.[1] We affirm.

---

[1] This Court, in *In re Basso Trust*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 337321), affirmed the probate court's order permitting Ronald Barron to resign as trustee of the decedent's trust and approving the appointment of Fraser as successor trustee.

## I. REMOVAL OF MARY AS PERSONAL REPRESENTATIVE

Mary argues that the probate court abused its discretion in granting Fraser's petition to remove Mary as personal representative of the decedent's estate because there was no valid basis to do so, as she has always acted in the best interests of the estate. We disagree.

This Court reviews for an abuse of discretion a probate court's decision regarding the appointment and removal of a personal representative. *In re Kramek Estate*, 268 Mich App 565, 575-576; 710 NW2d 753 (2005). An abuse of discretion occurs when the probate court "chooses an outcome outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). "[A]ppeals from a probate court decision are on the record, not de novo." *Id.* However, issues involving the application and interpretation of a statute are reviewed de novo as questions of law. *Id.* Also, "[t]his Court reviews the probate court's factual findings for clear error . . . ." *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Duke Estate*, 312 Mich App 574, 580-581; 887 NW2d 1 (2015).

"An interested person may petition for removal of a personal representative for cause at any time." MCL 700.3611(1). An "interested person" is defined as "the incumbent fiduciary; an heir, devisee, child, spouse, creditor, and beneficiary and any other person that has a property right in or claim against a trust estate or the estate of a decedent, ward, or protected individual; a person that has priority for appointment as personal representative; and *a fiduciary representing an interested person*." MCL 700.1105(c) (emphasis added).

Pursuant to MCL 700.3611(2), the probate court may grant a petition to remove a personal representative under the following circumstances:

(a) Removal is in the best interests of the estate.

(b) It is shown that the personal representative or the person who sought the personal representative's appointment intentionally misrepresented material facts in a proceeding leading to the appointment.

(c) The personal representative did any of the following:

(*i*) Disregarded a court order.

(*ii*) Became incapable of discharging the duties of office.

(*iii*) Mismanaged the estate.

(*iv*) Failed to perform a duty pertaining to the office.

As an initial matter, Fraser—as the trustee of the decedent's trust in which the decedent's four children (Mary, Louis Joseph Basso, Marjory Ann Basso-West, and Marie Gabriel Roeder) are all beneficiaries—is a fiduciary to each of the beneficiaries' interests in the trust. See *In re Basso Trust*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018

-2-

(Docket No. 337321), pp 1-4. Because the decedent's will is a pour-over will, which requires the residuary of his estate to be administered by the terms of the trust, Fraser acts as a fiduciary to each of the beneficiaries with respect to the administration of the decedent's estate. Therefore, Fraser, as a fiduciary to each of the beneficiaries of the decedent's estate and trust, is an interested party. MCL 700.1105(c). Accordingly, Fraser was permitted to petition the probate court to remove Mary as personal representative of the decedent's estate. MCL 700.3611(1).

On January 4, 2018, Fraser filed a petition to remove Mary as personal representative of the decedent's estate, asserting that she disregarded a court order, is incapable of discharging the duties of office, and mismanaged the estate. The record shows that Mary disregarded the probate court's April 26, 2017 order requiring her to vacate the trust residence 30 days after entry of the order. The terms of the trust permitted Mary to occupy the trust residence for up to two years after the decedent died, "or until such time as she completes her education and obtains employment, whichever comes first." The decedent died on December 18, 2014. However, Mary continued to live in the trust residence after the probate court's April 26, 2017 order; after Fraser filed his January 4, 2018 petition to remove her as personal representative of the decedent's estate; and, by her own admission, as late as April 3, 2018—well beyond the two years permitted by the trust. Mary's continued occupancy of the trust residence prevented Fraser from selling the trust residence, which was supposed to be sold after Mary's two-year occupancy period expired. Therefore, her violation of the probate court's April 26, 2017 order constituted sufficient grounds to remove her as personal representative. MCL 700.3611(2)(c)(*i*).

There was also sufficient evidence showing that Mary mismanaged the estate. Mary argues on appeal that the estate "remains open because it is still in litigation with [Fraser] and others." However, Mary fails to indicate which cases she is referring to that are currently being litigated. Further, when Ronald Barron, the former trustee, filed his July 10, 2015 response to Mary's June 25, 2015 petition to keep the estate funds and assets separate from the trust, Barron indicated that there was no reason for the decedent's estate to remain open, as the decedent's funds and assets were required to be distributed through the trust pursuant to the decedent's pour-over will. Mary, in her January 19, 2018 response to Fraser's January 4, 2018 petition to have her removed as personal representative, argued that the estate remained open because the estate's tax returns for 2013 and 2014 were "not properly prepared because the former Trustee [Barron] would not properly prepare them."

Not only does Mary provide different excuses for the inefficient administration of the decedent's estate, but even if Mary's contentions were true, they do not excuse Mary from her obligation to vacate the trust residence according to the terms of the trust and the probate court's April 26, 2017 order. In fact, Mary's noncompliance with Barron, Fraser, and the probate court, as well as her litigious actions—rather than Fraser's alleged breaches of his fiduciary duties— have caused, at least in part, the decedent's estate to remain open for more than four years. See MCL 700.3704 ("A personal representative shall proceed expeditiously with the settlement and distribution of a decedent's estate . . . .").

Incredibly, Mary argues on appeal that she "has competently discharged the duties of her office and the Estate is not under any legal distress." Not only did the probate court find otherwise, but Mary herself stated at the January 24, 2018 hearing for Fraser's petition to remove her as personal representative that the trust residence was "in shambles." Mary alleged that

Fraser's abandonment and neglect of the trust residence caused severe damages to the trust residence—including, among other issues, severe water damage, collapsed ceilings and floors, and mold and insect infestations. However, Mary has been the sole occupant of the trust residence since the decedent's death, and Fraser was appointed as the successor trustee in February of 2017, well after Mary was supposed to vacate the home in December of 2016. Also, while Mary first cites issues related to the trust residence occurring in December of 2017, the terms of the trust only required the trustee to use trust funds to pay for the trust residence's taxes, insurance, upkeep, and maintenance for the same two-year period that Mary was allowed to occupy the trust residence—until December of 2016. The money from the trust that was set aside for the trust residence's maintenance and upkeep had depleted by December of 2017, resulting in the trust residence sustaining severe damages, something that would not have occurred had Mary vacated the trust residence in December of 2016 and allowed Fraser access to the trust residence. Therefore, Mary's claims are, to say the least, inaccurate.

With respect to a Lincoln Town Car outside of the trust residence, the parties dispute whether the car is titled in the decedent's name (therefore constituting estate property that Mary, as the personal representative, was responsible for managing), or titled in the name of the trust (therefore constituting trust property that Fraser, as the trustee, is responsible for managing). The record is unclear whether the Lincoln Town Car is actually titled in the decedent's name, or in the name of the trust. However, had Mary been compliant with the probate court's July 15, 2015 order requiring her to "sign over or transfer all estate of Louis G. Basso[, Jr.] assets to the Louis G. Basso, Jr. Revocable Trust", the car's title would have been transferred to the trust at that time, along with the rest of the decedent's funds and assets, and this issue would not have been before the probate court in January of 2018.

Accordingly, Mary's failure to comply with the probate court's July 15, 2015 order and the probate court's April 26, 2017 order constituted sufficient grounds for her removal as personal representative of the decedent's estate. MCL 700.3611(2)(c)(*i*). Also, the fact that the decedent's estate has been open for more than four years, seemingly without any substantial progress or reason for the estate to remain open, evidences Mary's mismanagement of the estate and her failure to perform the duties required of her as personal representative. MCL 700.3611(c)(*iii*) and (*iv*). Finally, her failure to cooperate with Barron and Fraser in closing out the decedent's estate so that the decedent's funds and assets—including Mary's own inheritance—can be distributed through the decedent's trust demonstrates her continued failure to act in the best interests of the decedent's estate. See MCL 700.3611(2)(a). Therefore, the probate court did not abuse its discretion in removing Mary as personal representative of the decedent's estate.

## II. APPOINTMENT OF FRASER AS SUCCESSOR PERSONAL REPRESENTATIVE

Mary argues that the probate court abused its discretion in appointing Fraser as successor personal representative of the decedent's estate because Fraser breached his fiduciary duties as trustee of the decedent's trust. Mary also argues that her litigation against Fraser for his breaches of his fiduciary duties created a conflict of interest that disqualified him from serving as successor personal representative of the decedent's estate. We disagree.

As stated under Part I, this Court reviews a probate court's decision to appoint a personal representative for an abuse of discretion, while its factual findings are reviewed for clear error. *Lundy Estate*, 291 Mich App at 352; *Kramek Estate*, 268 Mich App at 575-576. Issues involving the application and interpretation of a statute are reviewed de novo. *Temple Trust*, 278 Mich App at 128.

MCL 700.3414 governs the formal proceedings concerning the appointment of personal representatives and provides that, after notice to all interested persons, "the court shall determine who is entitled to appointment under [MCL 700.]3203, make a proper appointment, and, if appropriate, terminate a prior appointment found to be improper as provided in cases of removal under section 3611." MCL 700.3414(4). MCL 700.3203(1) provides for the priority of persons seeking appointment as the decedent's personal representative. The statute provides that a person nominated to act as personal representative in the decedent's will, unless disqualified, is first in priority. See *id*. "A person is not qualified to serve as a personal representative if the person is either under the age of 18 or is a person whom the court finds unsuitable in formal proceedings." MCL 700.3204(3).

Further, "[a]n objection to the appointment of a personal representative may be made only in a formal proceeding." MCL 700.3203(2). The party objecting to the appointment of a particular individual as personal representative carries the burden of establishing the unsuitability of the individual. *In re Estate of Hutton*, 191 Mich App 292, 294; 477 NW2d 144 (1991).

Here, Mary, having been nominated through the decedent's will, was first in priority to serve as personal representative of the decedent's estate. MCL 700.3204(1). However, the probate court, by removing her as personal representative, found her unsuitable to serve as personal representative. See MCL 700.3204 (3). As discussed under Part I, this decision did not amount to an abuse of discretion because Mary disregarded multiple court orders, mismanaged the decedent's estate, failed to perform the duties required of her as personal representative, and failed to act in the best interests of the decedent's estate. MCL 700.3611(2)(a); MCL 700.3611(c)(*i*), (*iii*), and (*iv*).

Also, Mary, as the objecting party to Fraser's appointment as successor personal representative of the decedent's estate, failed to establish that Fraser was unsuitable to serve as successor personal representative. Mary argues that Fraser's breaches of his fiduciary duties— including his abandonment of the trust residence and his removal of the contents of the trust residence that belonged to Mary—disqualified him from serving as successor personal representative. "A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, [or] beneficiary . . . for whom the person is a fiduciary." MCL 700.1212(1). "A fiduciary shall observe the standard of care described in [MCL 700.]7803, and shall discharge all of the duties and obligations of a confidential and fiduciary relationship, including the duties of undivided loyalty; impartiality between heirs, devisees, and beneficiaries; care and prudence in actions; and segregation of assets held in the fiduciary capacity." MCL 700.1212(1). According to MCL 700.7803, a "trustee shall act as would a prudent person in dealing with the property of another . . . ." To remedy a breach of a fiduciary duty, the probate court may, among other things, remove the fiduciary from serving in that capacity. MCL 700.1308(1)(g).

There is no indication that Fraser breached his fiduciary duties to the trust, its beneficiaries, or to Mary in particular. Rather, as discussed above, it was Mary who actively thwarted Fraser's efforts to sell the trust residence by continuing to occupy the trust residence in violation of both the terms of the trust and the probate court's April 26, 2017 order to vacate the trust residence. Mary is correct in arguing that Fraser disposed of the contents of the trust residence that belonged to Mary under the terms of the trust; however, Fraser was acting pursuant to the probate court's February 8, 2018 order authorizing him "to enter [the trust residence] to remove all estate and trust property as identified in Decedent's Estate, Trust documents, Catch all assignment and disposition of personal property." Mary was given notice of the probate court's February 8, 2018 order, and had ample time to remove her belongings from the trust residence. Also, Fraser's actions allowed him to finally put the trust residence up for sale, which, according to the terms of the trust, was supposed to occur in December of 2016. Indeed, the terms of the trust only required the trustee to set aside enough money to pay for the taxes, insurance, upkeep, and maintenance of the trust residence for the same two-year period that Mary was allowed to occupy the trust residence. Therefore, it cannot be said that Fraser breached his fiduciary duties as trustee of the decedent's trust so as to disqualify him from serving as successor personal representative of the decedent's estate.

Further, Mary's argument, that her pending litigation against Fraser creates a conflict of interest that should disqualify him from serving as successor personal representative, is without merit. This Court, in *In re Sumpter Estate*, 166 Mich App 48, 55; 419 NW2d 765 (1988), determined that animosity between a personal representative and a beneficiary of an estate was an insufficient cause to remove the personal representative, even though the personal representative was named in a legal malpractice action brought by the decedent's widow (citation omitted). Similarly, the fact that Mary was, or currently is, suing Fraser for allegedly breaching his fiduciary duties as trustee is an insufficient ground to object to Fraser's appointment as successor personal representative absent evidence that Fraser mismanaged or negatively affected the administration of the decedent's trust. See *In re Gerald L. Pollack Trust*, 309 Mich App 125, 167; 867 NW2d 884 (2015) ("Neither conflicts of interest nor hostility provide a basis for removing a trustee or a personal representative of an estate unless the administration of the trust or estate has been affected.").

Mary also argues that the probate court's decision contradicts the decedent's intent as expressed through his will and trust, contending that it was "not the intent of Appellant's father[,] the decedent[,] to leave his daughter indigent and homeless and the Appellee enriched." "While trusts and wills are not the same, and different legal rules govern each, under Michigan law, courts apply the same rules of interpretation to trusts and wills." *In re Mardigian Estate*, 312 Mich App 553, 563; 879 NW2d 313 (2015) (quotation marks and citation omitted). The probate court's objective in interpreting a will or trust is to effectuate the intent of the testator or settlor, respectively. See *id*. We recognize that the decedent's will makes clear that he intended for Mary to serve as personal representative of his estate. However, the decedent's will also makes clear, by its pour-over provision, that the decedent intended for his funds and assets to be managed and distributed through his trust, which appointed an independent third-party to serve as the trustee. Therefore, it cannot be said that Mary's removal as personal representative and Fraser's appointment as successor personal representative fails to effectuate the decedent's intent because Fraser can now settle the decedent's estate and manage the decedent's funds and assets according to the trust. See *id*.

## III. MARY'S CLAIM OF JUDICIAL BIAS

Mary also argues that the probate court judge, Linda S. Hallmark, demonstrated "clear bias" in removing Mary as personal representative of the decedent's estate and appointing Fraser as successor personal representative. We disagree.[2]

Generally, to preserve an issue for appellate review, it must be raised, addressed, and decided by the lower court. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (quotation marks and citation omitted). Because Mary failed to file a motion in the probate court requesting the disqualification of Judge Hallmark, her claim that Judge Hallmark exhibited judicial bias against her in favor of Fraser is unpreserved. See MCR 2.003; *Meagher v Wayne State Univ*, 222 Mich App 700, 725; 565 NW2d 401 (1997).

In reviewing claims of judicial bias, this Court generally reviews a lower court's factual findings for an abuse of discretion and its application of the facts to the law de novo. *Kern v Kern-Koskela*, 320 Mich App 212, 231; 905 NW2d 453 (2017). However, this Court reviews unpreserved arguments for plain error affecting a party's substantial rights. *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000) (citation omitted). The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Kern-Koskela*, 320 Mich App at 231 (quotation marks and citation omitted). A judge must be disqualified when he or she cannot hear a case impartially, including when a judge is biased or prejudiced against a party or when circumstances lead to the appearance of impropriety. See MCR 2.003(C); *Kern-Koskela*, 320 Mich App at 231-232. "Judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Kern-Koskela*, 320 Mich App at 231-232 (quotation marks and citation omitted). Also, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *Id*. at 232 (quotation marks and citation omitted). "[T]he test for determining whether there is an appearance of impropriety is whether the conduct would

---

[2] While Mary discussed Judge Hallmark's alleged bias against her in the discussion section of her brief on appeal, Mary failed to present this issue in the statement of the issues presented section of her brief on appeal. Therefore, this issue is not properly before this Court. See MCR 7.212(C)(5); *River Investment Group v Casab*, 289 Mich App 353, 360; 797 NW2d 1 (2010) (noting that an issue is "waived" when a party "fail[s] to state it in the statement of questions presented in its brief on appeal"). Nevertheless, because the issue relates to Mary's constitutional right to due process (i.e., an unbiased, impartial decision-maker), we will address the issue.

create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *Id*. at 232 (quotation marks and citation omitted). "[A] trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. at 231 (quotation marks and citation omitted).

Here, Mary cannot overcome the presumption that Judge Hallmark was unbiased and impartial in her decision to remove Mary as personal representative of the decedent's estate and appoint Fraser as successor personal representative. Much of Mary's argument that Judge Hallmark was biased against her relates to Judge Hallmark's ruling. However, a judge is not biased against a party simply because it ruled against that party, and there is no indication that Judge Hallmark's decision to remove Mary as personal representative constituted a display of "a deep-seated favoritism or antagonism that would make fair judgment impossible." See *Id*. at 231-232.

Mary also argues that Judge Hallmark allowed Fraser to make false statements, and limited Mary's ability to correct Fraser's false statements. However, at the hearing for Fraser's petition to remove Mary as personal representative, Judge Hallmark merely requested that Mary stop interrupting Fraser while he talked and while Judge Hallmark stated her ruling. Mary was given the opportunity to respond to Fraser's petition before Judge Hallmark's ruling. Therefore, Judge Hallmark's remarks to Mary do not rise to the level of judicial bias, and Mary's argument regarding Judge Hallmark's bias is meritless. See *Id*.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto